**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 25-5248**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

───────────────

VERA INSTITUTE OF JUSTICE, *et al.*,
                                        *Plaintiffs-Appellants*,

v.

DEPARTMENT OF JUSTICE, *et al.*,
                                        *Defendants-Appellees.*

───────────────

On Appeal from the U.S. District Court
for the District of Columbia
No. 1:25-cv-01643 (Mehta, J.)

───────────────

**RESPONSE TO EMERGENCY MOTION
FOR INJUNCTION PENDING APPEAL**

───────────────

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

ERIC MCARTHUR
*Deputy Assistant Attorney General*

JOHN BAILEY
*Counsel to the Assistant Attorney General*
U.S. Department of Justice,
Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-6993

# TABLE OF CONTENTS

INTRODUCTION.................................................................................1

STATEMENT ....................................................................................2

ARGUMENT .....................................................................................6

    I.     Plaintiffs Are Not Likely to Succeed On the Merits of Their APA
         Claims..................................................................................7

         A.     Plaintiffs' claims are in essence contract claims and thus
                 must be brought in the Court of Federal Claims.........................7

         B.     Grant funding decisions are committed to agency discretion
                 by law. .......................................................................14

         C.     Plaintiffs' APA claims lack merit. ..............................15

    II.    The Remaining Factors Disfavor An Injunction Pending Appeal. ........18

CONCLUSION ................................................................................20

## INTRODUCTION

After a careful, individualized review, the Department of Justice (DOJ) decided to terminate 376 grant agreements—a tiny fraction of its over 11,000 open awards—and intends to re-obligate the funds for new projects that better advance current agency priorities. Plaintiffs sought an injunction requiring reinstatement of these grants (on behalf of themselves and a class of other grantees). But as Judge Mehta recognized, there is no legal basis under these circumstances for a court to order DOJ to revive and keep paying for grants that the Executive Branch views as inconsistent with the interests of the United States.

Having failed to persuade the district court, Plaintiffs now ask this Court for the extraordinary remedy of an injunction pending appeal. They are not entitled to that relief. To start, their claims are not likely to succeed on the merits. Plaintiffs invoke the Administrative Procedure Act (APA), but their challenges to the terminations of their grants are in essence contractual and thus "belong in the Court of Federal Claims." App.149. After all, neither the APA nor any other source of law compels DOJ to make or maintain these grants to these Plaintiffs. Rather, their claims hinge on the assertion that the *grant agreements* provide a right to continued funding, and that the terminations constituted a breach of their terms. But as this Court has long held and the Supreme Court has recently reiterated, these contract claims cannot be dressed up in APA garb. *See, e.g., Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985); *Dep't of Educ. v. California*, 145 S. Ct. 966 (2025) (per curiam).

1

The district court had no occasion to go further, but Plaintiffs' APA claims are unlikely to succeed on the merits, even if they could get past the jurisdictional bar. For one thing, as Judge Moss recently recognized in another DOJ funding case, the APA does not permit review of decisions to discontinue discretionary funding; those choices are committed to agency discretion by law. For another, DOJ followed all applicable regulations in exercising its contractual rights to terminate these grant agreements, and the termination decisions were both reasonable and reasonably explained.

The equities also weigh decisively against an injunction pending appeal. Any funds disbursed to Plaintiffs are unlikely to be recouped should DOJ later prevail—a point Plaintiffs have not disputed. The potential loss of hundreds of millions of dollars is sufficient to preclude injunctive relief in this case. *See Dep't of Educ.*, 145 S. Ct. at 969. Meanwhile, Plaintiffs face only monetary harm, which is classically reparable.

For these reasons, the motion for an injunction pending appeal should be denied.

## STATEMENT

**A.**    The Office of Justice Programs (OJP) is DOJ's largest grantmaking component and advances DOJ's mission in part by entering thousands of discretionary, competitive grant agreements with state and local law enforcement agencies, as well as community-based and other non-governmental entities. Dkt. 26-1 at 3. DOJ generally funds its OJP grants through sums appropriated directly to OJP, *see, e.g.*, Consolidated Appropriations Act, 2024, Pub. L. No. 118-42, 138 Stat. 25, 145, and sums derived from the Crime Victims Fund, *see* 34 U.S.C. § 20203(c)(1)(A); Dkt. 26-1 at 5.

2

Congress earmarked these funds for certain broad purposes, such as "opioid use reduction" and prevention of "internet crime," but did not mandate that the funds be awarded to any specific entity or a grantee's program. *See, e.g.*, Consolidated Appropriations Act, 2024, 138 Stat. at 147, 148. Rather, Congress vested DOJ with the discretion to identify the programs to be funded, the entities to whom to award grants, and the form the awards should take. *See* Dkt. 26-1 at 3. DOJ selects recipients through a competitive application process consistent with the law and agency priorities. *See id.*

All OJP grant agreements contain a clause that expressly incorporates the Office of Management and Budget's Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (Uniform Guidance), *see* 2 C.F.R. Part 200, into the award terms and conditions, *see* Dkt. 26-1 at 4. One provision of the Uniform Guidance allows OJP to terminate a grant unilaterally "pursuant to the terms and conditions of the [] award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4).

**B.** In February 2025, DOJ began a careful review of open OJP grant awards to determine if the award agreements aligned with agency priorities. In particular, the review analyzed whether the awards served to support law enforcement operations, combat violent crime, protect American children, support American victims of trafficking and sexual assault, and enhance coordination among law enforcement at all levels of government. *See* Dkt. 26-1 at 5. At that point, there were more than 11,000 open OJP awards. *See id.*

3

The review process gave individualized consideration to whether, based on the grant's project description, the award advanced agency priorities as articulated by DOJ leadership throughout the process. *See id.* Within a few weeks of the start of the review process, the number of awards under active focus had dropped to approximately 2,200. *See id.* Ultimately, DOJ determined that 376 open discretionary grants no longer effectuated DOJ priorities. *See id.* Between April 4 and April 22, OJP terminated those awards. *See id.* Each terminated grant recipient was sent a notice explaining the reason for termination, as well as the contractual basis for termination. *See id.* Each terminated grant recipient was further provided a right to an administrative appeal to contest any "disputed factual, legal or other issues." Dkt. 11-4 at 41; Dkt. 26-1 at 5.

**C.**     Plaintiffs are five organizations who had grant agreements terminated by DOJ. None filed an administrative appeal. *See* Dkt. 26-1 at 5.

In their Complaint, Plaintiffs alleged the terminations violated the APA, the Fifth Amendment, and the separation of powers, and were *ultra vires. See* App.22-30. As relevant here, the APA claims were two-fold. *First*, Plaintiffs asserted that the terminations were contrary to law because the language in 2 C.F.R. § 200.340(a)(4) was not itself repeated in the grant agreements and, in any event, does not in their view permit terminations based on a change in agency priorities. App.27. *Second*, Plaintiffs contended that the terminations were arbitrary, capricious, and an abuse of discretion because DOJ failed to sufficiently explain the reasons for termination and ignored "the reliance interests of Plaintiffs and other stakeholders." App.30.

4

Plaintiffs moved for a preliminary injunction seeking declaratory and injunctive relief that would require OJP to resume disbursing grant funds to them. *See* Dkt. 11-1; Dkt. 11-2 at 2 (requesting order requiring that DOJ "take all steps necessary to ensure that OJP disburses funds to Plaintiffs in the customary manner and in the customary timeframes"). Plaintiffs also moved to certify a class of all entities in the United States who had a grant terminated by DOJ in April 2025 pursuant to 2 C.F.R. § 200.340(a)(4), and sought preliminary class-wide relief too. *See* Dkt. 10. DOJ opposed both motions and also filed a motion to dismiss. *See* Dkts. 27, 28.

The district court denied preliminary relief, granted the motion to dismiss, and denied the class certification motion as moot. *See* App.170. The court held "that both APA claims are essentially contractual in nature" and so "belong in the Court of Federal Claims." App.149. Judge Mehta explained that the Supreme Court's order in *Department of Education* "foreclose[d] the exercise of jurisdiction" over the arbitrary and capricious claim. App.156. As to the contrary to law claim, the court reasoned that the source of the right and nature of the relief "marks the claim as essentially contractual." App.159. Specifically, because the regulation on which Plaintiffs rely "requires that the basis for termination be spelled out in 'the terms and conditions of the Federal award,'" the court "must look back to the awards themselves" to assess whether OJP violated it. App.159. As for relief, Plaintiffs "seek continued payment of the grants—in other words, specific performance." *Id.*

5

The court did exercise jurisdiction over Plaintiffs' constitutional and *ultra vires* claims, based on this Court's decision in *Transohio Saving Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598 (D.C. Cir. 1992). App.145-47. But the court ultimately concluded that those claims lacked merit and dismissed them. App.161-68.

Plaintiffs appealed and now request a class-wide injunction pending appeal. *See* Pls.' Mot. for Inj. Pending Appeal (July 11, 2025) (Mot.). They expressly disclaim any relief based on their constitutional claim, their *ultra vires* claim, or the part of their APA claim contending "that OJP violated Section 200.340 by failing to include the basis for termination in Plaintiffs' grant agreements." Mot. 8 n.2. Instead, they rest solely on their claims that the terminations were arbitrary and capricious, and that terminations are contrary to law if they are based on changed agency priorities.

## ARGUMENT

To obtain the "exceptional remedy of an injunction pending appeal," a plaintiff "faces the difficult task of coming forward with evidence and argument showing that it is likely that the district court abused its discretion in denying a preliminary injunction." *John Doe Co. v. CFPB*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (per curiam). A preliminary injunction may only be awarded to a plaintiff who makes a "clear showing" that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* Plaintiffs have not satisfied this standard.

6

## I.      Plaintiffs Are Not Likely to Succeed on the Merits of Their APA Claims.

To show a likelihood of success on this appeal, Plaintiffs must surmount three hurdles. *First*, they must show that Judge Mehta likely erred in concluding that he lacked jurisdiction over Plaintiffs' ostensible APA claims. *Second*, Plaintiffs must further show that their claims are reviewable under the APA even though DOJ's grant allocation and termination decisions are committed to agency discretion by law. *Finally*, Plaintiffs must show that DOJ's termination decisions were unreasonable, inadequately explained, or otherwise violated 2 C.F.R. § 200.340(a)(4). Plaintiffs cannot make any of these three showings, let alone all of them, and the Court should therefore deny their motion.

### A.      Plaintiffs' claims are in essence contract claims and thus must be brought in the Court of Federal Claims.

The district court correctly held that it lacked jurisdiction under the APA to enjoin DOJ's terminations of the grant agreements. Congress has assigned the Court of Federal Claims exclusive jurisdiction to adjudicate the sorts of claims that Plaintiffs raise here: that the Government has not honored the terms of its contracts and owes money to private parties as a result. Plaintiffs' allegations that DOJ improperly terminated their contracts under the terms of those contracts and seeking to compel the Government to resume making payments fall well within that jurisdictional scheme. As Judge Mehta correctly recognized, Plaintiffs' requested relief—an order requiring DOJ "to ensure that OJP disburses funds to Plaintiffs in the customary manner and in customary timeframes" (Dkt. 11-2 at 2)—is jurisdictionally off-limits.

7

1.    The federal government is generally "immune from suit in federal court absent a clear and unequivocal waiver of sovereign immunity." *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1105 (D.C. Cir. 2022). The APA provides "a limited waiver of sovereign immunity for claims against the United States" seeking non-monetary relief, *id.*, but that waiver does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought," *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). That carve-out "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Id.*

One such limitation is found in the Tucker Act, which provides for review in the Court of Federal Claims of "any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1). This Court has long recognized that "the Tucker Act 'impliedly forbids'" bringing "contract actions" against "the government in a federal district court" under the APA. *Albrecht v. Committee on Emp. Benefits of the Fed. Reserve Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004).

That jurisdictional barrier exists for good reasons. It ensures that contract claims against the Government are channeled to the tribunal with "unique expertise." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985). And it respects Congress's deliberate choice to limit the remedies available for such claims; Congress has generally not empowered the Claims Court to grant injunctive relief like specific performance. *See James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998).

8

In identifying claims subject to this limit, labels are not controlling. Rather, to ferret out whether a claim is a "disguised" contract claim, this Court looks at both "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982).

**2.**     Here, both factors expose that Plaintiffs' claims are contractual. To start, the source of rights underlying Plaintiffs' claims is their grant agreements. Plaintiffs do not dispute that, absent these agreements, they would have no basis for their claims and no interest in continued funding; there is no statute or regulation that requires OJP to allocate funds to these Plaintiffs or to their specific grant programs. Thus, "[t]he right to [funding] is created in the first instance by the contract[s]"—not any other source of law. *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985).

Plaintiffs cannot recharacterize their challenge to the Government's exercise of a contractual right as arbitrary and capricious. Allowing such essentially contractual claims to proceed in district court would undermine the Tucker Act. *See Megapulse*, 672 F.2d at 967 n.34 ("It is hard to conceive of a claim falling no matter how squarely within the Tucker Act which could not be urged to involve as well agency error subject to review under the APA. . . . We refuse to believe that Congress intended, in enacting the APA, so to destroy the Court of Claims by implication.").

In the same vein, Plaintiffs cannot avoid the strictures of the Tucker Act by insisting that their rights arise under a regulation, 2 C.F.R. § 200.340(a). As the district court appreciated, although the regulation "'might impose procedural requirements on

9

the government having some impact on the contract,' it 'in no way creates the substantive right to the remedy [Plaintiffs] seek[].'" App.159 (alteration in original).

Moreover, because the regulation hinges on the terms and conditions of the award, "it is possible to conceive of this dispute as entirely contained within the terms of the contract." *Ingersoll-Rand*, 780 F.2d at 78. Thus, while Plaintiffs repeatedly assert that their contrary-to-law claim "does not depend on the underlying grant agreements" (Mot. 8), that is plainly wrong. As the district court explained, § 200.340(a)(4) provides that an agency may terminate a contract "*pursuant to the terms and conditions of the [] award.*" (emphasis added). So "a court must look back to the awards themselves" to assess whether the regulation was violated. App.159. In short, this is a contract dispute all the way down. No amount of artful pleading can change that. As in *Ingersoll-Rand*, the "question . . . could be phrased as whether the contract forbids termination under these conditions," making Plaintiffs' claims essentially contractual. 780 F.2d at 78.

Indeed, the latter point makes this case even easier than *Spectrum Leasing* and *Ingersoll-Rand*. The plaintiffs there founded their purported APA claims on statutory or regulatory provisions that did *not* turn on the terms and conditions of the contracts— and that still did not defeat the essentially contractual nature of their claims. *See Spectrum Leasing*, 764 F.2d at 892 (alleging that withholding of payments violated procedures set forth in Debt Collection Act of 1982); *Ingersoll-Rand*, 780 F.2d at 77 n.4-5 (alleging that contract termination violated 48 C.F.R. § 14.404-1(a)(1), which "allows the government to cancel a contract after it has taken bids only upon a showing of a cogent and

compelling reason," and 48 C.F.R. § 14.401-1(a)(2), which "instructs the government to attempt to resolve ambiguities in a [Request for Proposal] prior to the opening of bids"). But as explained above, Plaintiffs' contrary-to-law claim is in no sense independent of the grant agreements; resolution of that claim points right back to the terms and conditions of each contract.

Turning to the second *Megapulse* factor, the relief Plaintiffs seek only confirms that their claims are essentially contractual. "Plaintiffs seek continued payment of the grants—in other words, specific performance." App.159; *see Ingersoll-Rand*, 780 F.2d at 79-80 (order "reinstating the original award of [a] contract . . . amount[ed] to a request for specific performance").

Plaintiffs complain that the Claims Court "cannot provide the relief" they seek— "reinstate[ment] of their grant agreements." Mot. 14. But that is the whole point. The "classic contractual remedy" of specific performance is generally unavailable against the Government. *Spectrum Leasing*, 764 F.2d at 895. In waiving immunity, Congress has made the "deliberate" choice to "limit[]" a private party's contract remedies against the Government. *Ingersoll-Rand*, 780 F.2d at 80. That choice must be respected: as this Court has explained, "[t]o prevent Government contractors from avoiding this remedy restriction"—as Plaintiffs are openly attempting to do here—"a complaint involving a request for specific performance must be resolved by the Claims Court." *Id.* As in *Ingersoll-Rand*, Plaintiffs' "argument that [a damages] remedy is inadequate because it does not include reinstatement of the contract is unavailing." *Id.*

11

The Supreme Court's recent order in *Department of Education* confirms the contractual nature of this case. The plaintiffs there challenged an agency's decision to terminate grant agreements as arbitrary and capricious, and the district court purported to "enjoin[] the Government from terminating" these grants and ordered it "to continue paying obligations as they accrue." 145 S. Ct. at 968. The Supreme Court granted a stay of that order, explaining that the Government was "likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA." *Id.* That same reasoning applies here.

**3.** Plaintiffs' counterarguments do not withstand scrutiny.

*First*, their reliance on *Bowen v. Massachusetts*, 487 U.S. 879 (1988), misses the point. *Bowen* concerned states' entitlement to federal funding directly under a statute, so it addressed the APA's exclusion for suits for "money damages," 5 U.S.C. § 702; *see* 487 U.S. at 891-901. Plaintiffs claim no such statutory entitlement to any funds. Even if their requested relief could be characterized as "other than money damages," they still fail the *separate* requirement of showing they do not seek relief that another statute "impliedly forbids." 5 U.S.C. § 702; *see Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002) (jurisprudence about APA carveout for suits for "money damages" "has no bearing" on ability of private parties to obtain injunction to enforce contractual obligations against the federal government); *Transohio*, 967 F.2d at 613 (explaining that *Bowen* did not overrule D.C. Circuit's "very specific holdings that the APA does not waive sovereign immunity for contract claims seeking specific relief").

12

Plaintiffs' reliance on *Bowen* is further doomed by *Department of Education*: the Supreme Court there made clear that *Bowen* does not permit APA jurisdiction in cases involving a request for an "order[] 'to enforce a contractual obligation to pay money.'" 145 S. Ct. at 968 (quoting *Knudson*, 534 U.S. at 212). Plaintiffs cannot distinguish *Department of Education* by inaccurately asserting that their claims involve a mere "possibility" of monetary relief (Mot. 15): again, they have expressly requested an injunction ordering OJP to "disburse[] funds to Plaintiffs in the customary manner and in customary timeframes." Dkt. 11-2 at 2.

*Second*, Plaintiffs' argument that grant agreements do not create a right to money damages is wrong. Plaintiffs ignore the Federal Circuit's decision in *San Juan City College v. United States*, 391 F.3d 1357 (Fed. Cir. 2004), which (as the district court correctly recognized) held that grant contracts "do[] not warrant a different standard" from other contracts and need not contain a specific provision for money damages—rather, "[i]f the government has breached the Agreement, [Plaintiffs are] entitled to seek whatever damages [they are] entitled to receive." 391 F.3d at 1361.

*Last*, that Plaintiffs have brought a putative class action does not take this case out of the orbit of *Spectrum Leasing* and *Ingersoll-Rand*. Plaintiffs cite no authority for their suggestion that they should be able to avoid the jurisdictional and remedial restrictions of the Tucker Act by amalgamating hundreds of discrete contract actions. The class action device is a procedural mechanism, not an end-run around Congress's careful remedial scheme for contract claims against the Government.

13

B.    **Grant funding decisions are committed to agency discretion by law.**

Even if they could circumvent this jurisdictional limit, Plaintiffs' APA claims are unlikely to succeed because they challenge DOJ's decision about how to allocate and expend lump-sum appropriations.  That decision is "committed to agency discretion by law."  5 U.S.C. § 701(a)(2); *see Lincoln v. Vigil*, 508 U.S. 182, 191 (1993).

In *Lincoln*, the Supreme Court held that the Indian Health Service's decision to discontinue a program it had previously funded and to instead reallocate those funds to other programs was committed to agency discretion by law and thus not reviewable under the APA.  *See* 508 U.S. at 185-88.  The Court explained that the "allocation of funds from a lump-sum appropriation is" an "administrative decision traditionally regarded as committed to agency discretion," because the "very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet it statutory responsibilities in what it sees as the most effective or desirable way."  *Id.* at 192.  That reasoning squarely applies to DOJ discretionary grant funding.

Plaintiffs argued below that *Lincoln* does not apply because (1) termination of funding is different than an initial allocation, and (2) DOJ regulations cabin its discretion.  *See* Dkt. 37 at 11-14.  But *Lincoln* itself shows that decisions to terminate funding are committed to agency discretion where no statute or regulation "so much as mention[s] the Program" at issue.  508 U.S. at 194.  After all, the *Lincoln* plaintiffs challenged a "decision to terminate" funding.  *Id.* at 190.  And like Plaintiffs here, the

14

plaintiffs in *Lincoln* argued that terminating the program violated the APA and "various agency regulations." *Id.* at 189. The Court nonetheless held that the "decision to discontinue the Program" was "unreviewable under § 701(a)(2)" because "an agency's allocation of funds from a lump-sum appropriation" is committed to agency discretion. *Id.* at 193. So too here.

Judge Moss's recent decision in *Amica Center for Immigrant Rights v. DOJ*, No. 25-cv-298, 2025 WL 1852762 (D.D.C. July 6, 2025), is instructive. The plaintiffs there brought APA challenges after DOJ terminated a contract that established and funded various legal service programs. *See id.* at *2. Relying on *Lincoln*, Judge Moss concluded that DOJ's decision to terminate the contracts and discontinue the programs was unreviewable under the APA, reasoning that "no statute or regulation even mention[s]" the programs at issue. *Id.* at *14 (quoting *Lincoln*, 508 U.S. at 190). As the same is true of Plaintiffs' grant programs, DOJ's decision to terminate those programs is similarly shielded from APA review.

**C.    In any event, Plaintiffs' APA claims lack substantive merit.**

Even if this Court could review Plaintiffs' purported APA claims, they would lack merit. DOJ's termination of the grant agreements complied with APA standards and was supported by both sufficient process and a reasonable basis.

**1.**    Under 2 C.F.R. § 200.340(a)(4), an agency may terminate a federal award "pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency

priorities." The "plain meaning" of the regulation controls. *Huashan Zhang v. USCIS*, 978 F.3d 1314, 1322 (D.C. Cir. 2020). DOJ terminated Plaintiffs' grant contracts after determining that they "no longer effectuate[] Department priorities." Dkt. 11-3 at 42. Nothing more is required to dispense with Plaintiffs' contrary-to-law claim.

Plaintiffs' contrary interpretation—that "agency priorities" must be construed to mean an agency's priorities "as they were articulated when the grant was awarded"—is entirely atextual. Dkt. 11-1 at 17. This artificial limitation has no foundation in the language of the termination provision, and there is no basis to treat an agency's priorities as trapped in amber. The text confirms the commonsense conclusion that "agency priorities" refers to priorities as they exist at the time of the termination decision. The regulation's use of the present tense—"effectuates"—demonstrates that "agency priorities" (the object of "effectuates") is a present reality rather than a past condition. *See Stanley v. City of Sanford*, 145 S. Ct. 2058, 2063 (2025) ("To ascertain a statute's temporal reach, this Court has frequently looked to Congress' choice of verb tense.").

**2.** DOJ's termination decisions were also "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). To start, Plaintiffs' assertion that the grants were arbitrarily terminated "en masse," Mot. 23, is contrary to the record, which indicates that DOJ engaged in a careful, individualized review process to assess whether each award continued to effectuate agency priorities. This process unfolded over several months and ultimately resulted in DOJ terminating only a tiny fraction of OJP's open awards. *See* Dkt. 26-1 at 5.

16

DOJ also gave "a satisfactory explanation" for each termination. *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). A Notice of Termination was sent to each terminated grant recipient detailing the reasons and contractual basis for termination. In each, OJP explained that the agreement was being terminated under 2 C.F.R. § 200.340(a)(4) because the award "demonstrates that it no longer effectuates Department priorities." Dkt. 11-3 at 42. The notices further explained that DOJ was choosing to focus on "more directly supporting certain law enforcement operations, combatting violent crime, protecting American children, and supporting American victims of trafficking and sexual assault, and better coordinating law enforcement efforts at all levels of government." Dkt. 11-3 at 42.

These explanations are more than sufficient under the APA's deferential standard. DOJ's explanations show that its termination decisions "w[ere] based on a consideration of the relevant factors," and evince no "clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Plaintiffs have given no sound basis to second-guess DOJ's conclusions, and to disregard its reasonable rationale would "represent[] a substantial intrusion into the working of another branch of Government" that the Supreme Court has cautioned against. *Dep't of Commerce v. New York*, 588 U.S. 752, 781 (2019).

For all of these reasons, together and in combination, Plaintiffs have not made the requisite showing of likely success on the merits to warrant the relief they seek.

## II.     The Remaining Factors Disfavor an Injunction Pending Appeal.

The balance of equities does not support an injunction either. Any injunction would cause irreparable harm to the federal fisc given the difficulty (if not impossibility) of recoupment, and a class-wide injunction all the more so. Meanwhile, Plaintiffs have no credible claim to irreparable harm based on the termination of monetary grants.

The remedy that Plaintiffs seek—an order forcing the Government to expend taxpayer funds in ways that it has determined do not advance the interests of the United States—would work extraordinary harm to the Executive Branch and to the public interest. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting that these factors merge in cases involving the Government). To start, an injunction risks irreparably harming the public fisc. As in *Department of Education*, Plaintiffs have not "promised to return withdrawn funds should [their] grant termination[s] be reinstated," so the Government "is unlikely to recover the grant funds once they are disbursed." 145 S. Ct. at 969.

Moreover, the public also has an interest in preserving the Executive Branch's ability to lawfully direct and guide agencies' spending decisions, and, in particular, to ensure that tax dollars are allocated to grant programs that most effectively advance agency priorities.

On the other side of the scale, Plaintiffs would not be irreparably harmed absent injunctive relief. This is a case about funding, and the gravamen of Plaintiffs' injury is monetary—the classic example of *reparable* harm. It is "well settled that economic loss does not, in and of itself, constitute irreparable harm." *Mexichem Specialty Resins, Inc. v.*

18

*EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015). "Financial injury is only irreparable where no adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation." *Id.* Not so here: as Judge Mehta reasoned in denying an affirmative injunction pending appeal, "[n]o Plaintiff claims that it will have to close its doors absent immediate reinstatement of their grant funding." Dkt. 57 at 2. And the other harms that Plaintiffs identify stemming from these pecuniary harms "are not so grave as to warrant a rare affirmative injunction pending appeal." *Id.* at 3. In the end, Plaintiffs fail to meaningfully address why they cannot seek "any wrongfully withheld funds through suit in an appropriate forum." *Department of Education*, 145 S. Ct. at 969. If Plaintiffs prevail in the Claims Court, they will receive funds to the extent required by law. That fact fatally undermines Plaintiffs' assertion of irreparable harm.[1]

Nor can Plaintiffs meet their burden with a vague reference to unnamed "[o]ther organizations" that "have reported" irreparable injury. App.179. That is not the sort of "substantiating evidence" necessary for "the essential showing of irreparable harm." *KalshiEX LLC v. CFTC*, 119 F.4th 58, 67 (D.C. Cir. 2024). Plaintiffs' speculation that the loss of grant funding has led to increased community violence also does not work, including because it is highly attenuated and unsubstantiated.

---

[1] Moreover, despite finding no basis for an injunction pending appeal, the district court agreed (following the Government's non-opposition) to order the Government not to re-obligate or otherwise diminish the sums awarded but terminated under the named Plaintiffs' grant agreements before October 1, 2025. *See* Dkt. 57. That allows the funds to remain available if Plaintiffs seek expedited review in this Court.

19

At minimum, any injunction pending appeal must be limited to the named Plaintiffs. Plaintiffs have not argued, much less shown, that each member of the putative class has been irreparably harmed by the loss of funding. Plaintiffs' reliance on *AARP v. Trump*, 145 S. Ct. 1364 (2025), is thus misplaced—that case concerned a class at risk of imminent deportation and irreparable harm, and temporary injunctive relief was necessary "to preserve [the Court's] jurisdiction pending appeal." *Id.* at 1369. That does not remotely describe this case. And the Supreme Court has more recently emphasized that courts should not enter relief for nonparties. *See Trump v. CASA, Inc.*, --- S. Ct. ---, 2025 WL 1773631 (U.S. June 27, 2025).

## CONCLUSION

For these reasons, the Court should deny an injunction pending appeal.

20

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*
YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*
ERIC MCARTHUR
*Deputy Assistant Attorney General*


*/s/ John Bailey*
JOHN BAILEY
*Counsel to the Assistant Attorney General*
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
*John.Bailey@usdoj.gov*
(202) 514-6993

Dated:  July 21, 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing response complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 5,172 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 365 in proportionally spaced 14-point Garamond type.


*/s/ John Bailey*
John Bailey

Dated:  July 21, 2025                Attorney for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2025, I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.


/s/ *John Bailey*
John Bailey

Dated: July 21, 2025                  Attorney for Appellants