ORAL ARGUMENT SCHEDULED FOR OCTOBER 21, 2025

No. 25-5248

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

VERA INSTITUTE OF JUSTICE; CENTER FOR CHILDREN & YOUTH JUSTICE; CHINESE FOR AFFIRMATIVE ACTION; FORCE DETROIT; HEALTH RESOURCES IN ACTION,

*Plaintiffs-Appellants*,

v.

UNITED STATES DEPARTMENT OF JUSTICE; PAMELA J. BONDI, in her official capacity as United States Attorney General; OFFICE OF JUSTICE PROGRAMS; MAUREEN HENNEBERG, in her official capacity as Acting Head of the Office of Justice Programs,

*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Columbia, No. 1:25-cv-01643 (Hon. Amit P. Mehta)

## BRIEF OF *AMICI CURIAE* CONTRACT LAW SCHOLARS MARK GERGEN, GREGORY KLASS, AND DANIEL MARKOVITS IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REVERSAL

Jeffrey R. Babbin
Wiggin and Dana LLP
265 Church Street
New Haven, CT 06510
(203) 498-4400
jbabbin@wiggin.com

*Attorney for Amici Curiae*

## CERTIFICATE AS TO PARTIES,
## RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), *amici curiae* Mark Gergen, Gregory Klass, and Daniel Markovits adopt by reference the Certificate as to Parties, Rulings, and Related Cases filed by Defendants-Appellees on August 11, 2025. In addition, Mark Gergen, Gregory Klass, and Daniel Markovits filed with this Court a Notice of Intent to File Amicus Brief in support of Appellants on August 18, 2025.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .i

TABLE OF AUTHORITIES.........................................................................ii

GLOSSARY OF ABBREVIATIONS .......................................................viii

INTERESTS OF AMICI CURIAE ...........................................................1

CERTIFICATE OF COUNSEL................................................................2

INTRODUCTION AND SUMMARY OF ARGUMENT ..........................2

ARGUMENT ..........................................................................................8

    I.  The Remedy Appropriate to Plaintiffs' Claims Is Not
        Contractual in Nature..................................................................11

    II. The Grant Agreements Are Not the Source of Plaintiffs'
        Claims..........................................................................................22

CONCLUSION .....................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*American Public Health Association v. National Institutes of Health*,
  No. 25-1611, 2025 WL 2017106 (1st Cir. July 18, 2025) ..................... 29

*Arbitron, Inc. v. Tralyn Broad., Inc.*,
  400 F.3d 130 (2d Cir. 2005) .................................................. 12

*Aronstein v. Massachusetts Mut. Life Ins. Co.*,
  15 F.4th 527 (1st Cir. 2021) ................................................. 28

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) .......................................................... 10

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
  38 F.4th 1099 (D.C. Cir. 2022) ............................................ 8, 9

*Department of Education v. California*,
  145 S.Ct. 966 (2025) ......................................................... 10

*Est. of Caruso v. Caruso*,
  322 A.3d 885 (Pa. 2024) ...................................................... 12

*Evans v. Neumann*,
  278 F. 1013 (D.C. Cir. 1922) ................................................. 12

*Freund v. Washington Square Press, Inc.*,
  34 N.Y.2d 379 (1974) ......................................................... 15

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) .......................................................... 10

*Indep. Mgmt. Co. v. Anderson & Summers*, LLC,
  874 A.2d 862 (D.C. 2005) ..................................................... 12

*Ingersoll-Rand Co. v. United States*,
  780 F.2d 74 (D.C. Cir. 1985) ...................................... 6, 7, 27, 30

*Kearsarge Computer, Inc. v. Acme Staple Company, Inc.*,
  118 N.H. 705 (1976) .......................................................... 14

*Kidwell v. Dep't of Army, Bd. for Correction of Mil. Recs.*,
  56 F.3d 279 (D.C. Cir. 1995) ................................................. 23

iii

*Maryland Indoor Play, LLC v. Snowden Inv. LLC,*
  2025 WL 1803206 (Md. July 1, 2025) ................................................. 12

*Massie v. United States,*
  226 F.3d 1318 (Fed. Cir. 2000) .................................................. 16, 19, 20

*Megapulse v. Lewis,*
  672 F.2d 959 (D.C. Cir. 1982) ..................................... 7, 8, 9, 22, 23, 30

*N. Indiana Pub. Serv. Co. v. Carbon Cnty. Coal Co.,*
  799 F.2d 265 (7th Cir. 1986) ............................................................. 18

*New York v. Nat'l Sci. Found.,*
  No. 25 CIV. 4452 (JPC), 2025 WL 2180478 (S.D.N.Y. Aug. 1, 2025)..11

*Rockingham County v. Luten Bridge Co.,*
  35 F.2d 301 (4th Cir. 1929) ............................................................... 15

*Rodman v. Safeway, Inc.,*
  No. 11-CV-03003-JST, 2014 WL 988992 (N.D. Cal. Mar. 10, 2014),
  *aff'd,* 694 F. App'x 612 (9th Cir. 2017) ............................................. 27

*Spectrum Leasing Corp. v. United States,*
  764 F.2d 891 (D.C. Cir. 1985)............................ 6, 7, 11, 12, 13, 14, 30

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
  559 U.S. 662 (2010) ........................................................................... 26

*TAS Distrib. Co. v. Cummins Engine Co.,*
  491 F.3d 625 (7th Cir. 2007) ............................................................. 12

*Transohio Sav. Bank v. Dir., Off. of Thrift Supervision,*
  967 F.2d 598 (D.C. Cir. 1992)............................................................ 22

*United States Conf. of Cath. Bishops v. U.S. Dep't of State,*
  770 F. Supp. 3d 155 (D.D.C. 2025), *dismissed sub nom. United States
  Conf. of Cath. Bishops v. United States Dep't of State*, No. 25-5066,
  2025 WL 1350103 (D.C. Cir. May 2, 2025), ...................................... 11

*United States v. King,*
  395 U.S. 1 (1969) ............................................................................... 16

*Van Drasek v. Lehman,*
  762 F.2d 1065 (D.C. Cir. 1985)......................................................... 23

*Van Wagner Advertising Corp. v. S & M Enterprises,*
  67 N.Y.2d 186 (1986) ........................................................................ 17

*Vedachalam v. Tata Consultancy Servs.*, Ltd.,
   No. C 06-0963 CW, 2012 WL 1110004 (N.D. Cal. Apr. 2, 2012) ........28

*Widakuswara v. Lake*,
   No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025).....................11

## Statutes and Rules

Administrative Procedure Act (APA)................... 3, 5, 6, 9, 10, 21, 24, 28

Tucker Act, 28 U.S.C. §§ 1346, 1491.............................. 7, 8, 9, 16, 22, 23

28 U.S.C. § 2201 ....................................................................................18

Debt Collection Act, 31 U.S.C. §§ 3701 et seq. ......................................13

U.C.C. § 2-709.......................................................................................14

OMB's Uniform Administrative Requirements, 2 C.F.R. § 200.340 24, 27

Fed. R. Civ. P. 23(b)(3) ......................................................................5, 27

## Briefs

Defendants' Cross-Motion for Summary Judgment, *Amica Ctr. for
   Immigrant Rts. v. U.S. Dep't of Just.*,
   No. 25-298, 2025 WL 1808068 (D.D.C. May 9, 2025) .........................12

Corrected Memorandum of Law in Support of Defendants' Motion to
   Dismiss, *Green & Healthy Home Initiatives, Inc. v. EPA*,
   No. 25-cv-1096-ABA, 2025 WL 1872220 (D. Md. May 21, 2025).........12

Defendants' Opposition to Plaintiffs' Motion for a Preliminary
   Injunction, *Harris Cnty, Texas v. Kennedy*,
   No. 25-cv-01275, 2025 WL 1938492 (D.D.C. May 14, 2025) ...............12

Defendants' Combined Opposition to Plaintiffs' Emergency Motions,
   *Massachusetts Fair Hous. Ctr. v. Dep't of Hous. & Urb. Dev.*,
   No. CV 25-30041-RGS, 2025 WL 1119868 (D. Mass. Mar. 21, 2025) .12

Brief of Amicus Curiae Legal Scholars of Federal Courts and
   Jurisdiction in Support of Plaintiffs-Appellees, *State of New York v.
   Donald J. Trump*,
   Nos. 25-1236 & 25-1413 (1st Cir.) (filed July 25, 2025) ......................11

Motion to Dismiss, *Sustainability Inst. v. Trump*,
   No. 2:25-cv-02152-RMG, 2025 WL 1787997 (D.S.C. May 27, 2025) ...12

## Other Authorities

Bruce W. Frier & James J. White, *The Modern Law of Contracts* (4th ed. 2019) ........................................................................... 15

Daniel Markovits & Alan Schwartz, *The Myth of Efficient Breach: New Defenses of the Expectation Interest*, 97 Va. L. Rev. 1939 (2011) ........ 21

Douglas J. Whaley & David Horton, *Cases, Problems, and Materials on Contracts* (9th ed. 2023) ................................................. 16

E. Allan Farnsworth, *Farnsworth on Contracts* (3d ed. 2004) ......... 17, 18

E. Allan Farnsworth, *Legal Remedies for Breach of Contract*, 70 COLUM. L. REV. 1145 (1970) ........................................... 25

George M. Cohen, *The Fault Lines in Contract Damages*, 80 Va. L. Rev. 1225 (1994) .................................................. 25

Gregory Klass, *To Perform or Pay Damages*, 98 Va. L. Rev. 143 (2012) .................................................... 21

Gregory Klass, *Two Forms of Formalism in Contract Law*, 46 Cardozo L. Rev. 369 (2024) .......................................... 26

Hanoch Dagan & Mark P. Gergen, *Autonomy and Form*, 53 Hofstra Law Rev. 1 (2024) ............................................. 26

John P. Dawson et al., *Contracts: Cases and Comments* (11th ed. 2019) ............................................................ 15

*The Path of the Law*, 10 Harv. L. Rev. 457 (1897), *reprinted in* 110 Harv. L. Rev. 991 (1996-1997) .......................................... 4, 20

Restatement (Second) of Contracts § 304 (1981) ................................... 29

Restatement (Second) of Contracts §§ 316-341 (1981) .......................... 29

Restatement (Second) of Contracts § 344 (1981) ..................................... 4

Restatement (Second) of Contracts § 345(e) (1981) ............................... 18

Restatement (Second) of Contracts § 347 ills. 5-7 (1981) ...................... 14

Restatement (Second) of Contracts § 358, ills. 1 (1981) ........................ 16

Restatement (Second) of Contracts § 359 (1981) ................................... 13

Restatement (Second) of Contracts § 364 (1981) ................................... 17

Restatement (Second) of Contracts Ch. 16 Introductory Note (1981) ........................................................................ 21, 25

Robert S. Summers et al., *Contract and Related Obligation: Theory, Doctrine & Practice* (8th ed. 2021) ...................................................... 15

Robin West, *Normative Jurisprudence: An Introduction* (2011) .............. 1

Ronald J. Scalise Jr., *Why No "Efficient Breach" in the Civil Law?: A Comparative Assessment of the Doctrine of Efficient Breach of Contract*, 55 Am. J. Comp. L. 721 (2007) ........................................... 21

# GLOSSARY OF ABBREVIATIONS

APA              Administrative Procedure Act

OJP             Office of Justice Programs

OMB            Office of Management and Budget

## INTERESTS OF AMICI CURIAE[1]

*Amici curiae* are leading contract law scholars. Each has published extensively on contract doctrine and theory, and each is an author on a leading contracts casebook. As legal scholars, *amici* have an interest in the correct understanding and application of the law of contract. *See generally* ROBIN WEST, NORMATIVE JURISPRUDENCE: AN INTRODUCTION (2011) (arguing that a distinctive feature of legal scholarship is that it seeks not only to understand law, but also to make it better). Amici are:[2]

- Mark Gergen, Robert and Joann Burch D.P. Professor of Tax Law and Policy, University of California Berkeley Law School, co-author *inter alia* of FULLER, EISENBERG, & GERGEN, BASIC CONTRACT LAW (11th ed. 2023)

- Gregory Klass, Frederick J. Haas Chair in Law and Philosophy, Georgetown University Law Center, co-author *inter alia* of AYRES, KLASS & STONE, STUDIES IN CONTRACT LAW (10th ed. 2024)

---

[1] Pursuant to Circuit Rule 29(b), all parties have given their consent to the submission of this brief. Counsel for the parties did not author this brief in whole or in part. The parties and their counsel have not contributed money intended to fund preparing or submitting the brief. No persons other than the *amici curiae* or their counsel contributed money to fund preparation or submission of this brief.

[2] *Amici* submit this brief as individuals. Institutional affiliation is noted for informational purposes only and does not indicate those institutions' endorsement of the views expressed in this brief.

- Daniel Markovits, Guido Calabresi Professor of Law, Yale Law School, co-author *inter alia* of MARKOVITS & RAUTERBERG, CONTRACTS: LAW, THEORY, AND PRACTICE (2018)

## CERTIFICATE OF COUNSEL

Pursuant to Circuit Rule 29(d), counsel states that the filing of this separate brief of the *amici curiae* is necessary to present *amici*'s views in full for the benefit of the Court as it considers how to resolve the important questions of jurisdiction and contract law in this case. This brief presents a distinct basis for the Court to conclude that the District Court had jurisdiction to adjudicate Plaintiffs' claims. As contract law scholars, *amici* provide a unique academic approach for the Court to classify Plaintiffs' claims and determine they do not sound in contract. That analysis will assist the Court in this case and in other cases seeking review of government action in a federal district court.

## INTRODUCTION AND SUMMARY OF ARGUMENT

In this appeal, as in a raft of other cases involving constitutional, statutory, and regulatory challenges to the rapid mass cancellation of federal grants or grant programs, the government deploys jurisdictional arguments in an effort to restrict the judiciary's ability to review the legality of executive actions. Specifically, the government attempts to

2

confine jurisdiction over Plaintiffs' claims to a court that is powerless to remedy the alleged violations. The arguments by which the government would deny judicial review of Plaintiffs' claims fail because they conflate two distinct considerations: first, the interests that give Plaintiffs' standing to bring their claims; and, second, the nature of those claims. Assuming arguendo that the federal grants whose mass cancellation occasioned this lawsuit are contracts, it does not follow that Plaintiffs' claims sound in contract. Plaintiffs do not complain that the Office of Justice Programs (OJP) violated the terms of the grants it cancelled, but rather that OJP's wholesale grant-cancellation violated the Administrative Procedure Act (APA) and the United States Constitution. Moreover, rather than seeking contractual remedies to obtain the benefit of their bargains under the grants, Plaintiffs seek injunctive relief to vindicate their statutory and constitutional rights. Jurisdiction for these claims properly lies in the Federal District Courts.

The government's conflation stems in part from the fact that the injunctive relief appropriate if Plaintiffs succeed in vindicating their statutory and constitutional rights will likely include reinstatement of cancelled grants. Such injunctive relief, however, is not contractual in

nature. Oliver Wendell Holmes famously wrote, "The duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it,—and nothing else." *The Path of the Law*, 10 HARV. L. REV. 457 (1897), *reprinted in* 110 HARV. L. REV. 991, 995 (1996-1997). Holmes could make that claim because, contrary to the court's suggestion below, "the classic contract remedy" is not specific performance but damages. And damages are set not to undo the defendant's wrong but much more narrowly to protect "the interest of a *promisee* . . . [in] being put in as good a position as he would have been in had the contract been performed." Restatement (Second) of Contracts § 344 (1981) (emphasis added). If this were a contracts case, therefore, the remedy would be a damages award, the calculation of which would focus narrowly on Plaintiffs' gains from the grants, resulting in an award far below the cash value of what Plaintiffs would receive pursuant to grant reinstatements. In short, the injunctive relief appropriate if Plaintiffs succeed in any of their statutory or constitutional claims is very different from the remedy they would receive in a contract action for breach.

A second source of conflation is that the interest that underwrites Plaintiffs' claims involves grant agreements. Yet Plaintiffs are not

claiming breach; they are asserting claims under the APA and the Constitution. This can be seen in the questions the District Court will need to address to resolve those claims. As all first-year contracts professors teach, liability for breach is strict. It does not generally matter *why* the defendant did not perform—whether the breach was intentional, reckless, negligent, or innocent—but merely *that* they failed to do so. Yet Plaintiffs' APA and due process claims turn on why and how the government cancelled the grant programs—questions that would be entirely inapposite if the source of Plaintiffs' claims were in contract. Nor does the resolution of those claims turn on a determination of what the parties intended when the grant agreements were made. The issue is not whether the government had the power to terminate each grant pursuant to a termination clause or whether the government followed the procedures in such a clause. The existence of a contractual termination clause could not authorize the executive to violate a governing statute or the Constitution. Furthermore, if this were a contract action, the question of class certification would look very different. Differences among individual grant agreements might well preclude findings of commonality or preponderance in an action for breach. See Fed. R. Civ.

P. 23(b)(3). Such differences need not prevent class certification for the claims Plaintiffs bring, which turn not on whether the specific terms of particular grants were violated, but rather on whether the mass termination of grants violated Plaintiffs' statutory and constitutional rights. Finally, the noncontractual nature of these claims can be seen in the fact that persons other than Plaintiffs might also have standing to bring them. If they were contract claims, other parties would first have to establish that they were intended third-party beneficiaries or assignees, either of which would be a much higher bar than the test for standing. In short, the source of Plaintiffs' claims lies not in the contract but in the executive's obligation to follow the law.

In concluding that it lacked jurisdiction to hear Plaintiffs' APA claims, the court below relied on two decisions from this court: *Spectrum Leasing Corp. v. United States*, 764 F.2d 891 (D.C. Cir. 1985), and *Ingersoll-Rand Co. v. United States*, 780 F.2d 74 (D.C. Cir. 1985). Each addressed a case in which a government contractor tried to avoid the Court of Federal Claims' exclusive jurisdiction over an action for breach of a procurement contract by reframing what was clearly a claim for breach of contract as a claim for violations of other governing law. It is

important to prevent government contractors from performing such end-runs around the Tucker Act. *Spectrum*, *Ingersoll-Rand*, and similar cases, however, are easily distinguished from this and similar challenges to the executive branch's wholesale cancellation of grant programs. Whereas Plaintiffs in those cases argued that individualized decisions regarding the performance or termination of their contracts were arbitrary and capricious or otherwise violated governing law, Plaintiffs here are arguing that the executive's wholesale cancellation of grants was unconstitutional and violated the APA.

As this Court explained in *Megapulse v. Lewis,* "[t]he classification of a particular action as one which is or is not 'at its essence' a contract action depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." 672 F.2d 959, 968 (D.C. Cir. 1982). As to the source of rights, the Court recognized that "[c]ontract issues may arise in various types of cases where the action itself is not founded on a contract. . . [so that] the mere fact that a court may have to rule on a contract issue does not, by triggering some mystical metamorphosis, automatically transform an action based on [non-contractual rights] . . . into one on the contract and

7

deprive the court of jurisdiction it might otherwise have." *Id.* And as to the relief a plaintiff seeks, "so long as an action brought against the United States or an agency thereof is not one that should be classified from the outset as a 'contract action' for Tucker Act purposes, its remedies are also not contract related, and the mere fact that an injunction would require the same governmental restraint that specific (non)performance might require in a contract setting is an insufficient basis to deny a district court the jurisdiction otherwise available and the remedial powers otherwise appropriate." *Id.* at 971.

This appeal presents an opportunity for this Court to reassert the basic logic of *Megapulse* and to explain how to distinguish artful pleadings of what are at bottom claims for breach of contract, which belong in the Court of Federal Claims, from claims for statutory or constitutional violations that happen to involve grants that might be characterized as contracts.

## ARGUMENT

Everyone involved in this case agrees on four things. First, the United States enjoys sovereign immunity except where it has waived such immunity. *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th

1099, 1105 (D.C. Cir. 2022). Second, the APA waives such immunity for certain suits seeking relief other than money damages and district courts are authorized to hear such suits. 5 U.S.C. § 702; 28 U.S.C. § 1331. Third, the APA includes an exception to that waiver where another statute grants consent to suit and forbids the relief available under the APA. 5 U.S.C. § 702. Fourth, the Tucker Act, 28 U.S.C. §§ 1346, 1491, has been interpreted to give the Court of Federal Claims exclusive jurisdiction over suits against the United States for breach of contract claims seeking more than $10,000 in damages. *Crowley*, 38 F.4th at 1106. The jurisdictional question in this case, therefore, turns on whether Plaintiffs' claims sound in contract for purposes of the Tucker Act.

Everyone also agrees that the governing test for whether a claim sounds in contract for purposes of the Tucker Act can be found in the *Megapulse* rule, cited earlier, that "[t]he classification of a particular action as one which is or is not at its essence a contract action depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." 672 F.2d at 968. This brief discusses those two criteria in reverse order. Part I describes the gulf between the appropriate relief if Plaintiffs succeed in the claims they

9

have brought and what they would receive in an action for breach of contract. That gulf suffices to resolve this case. Part II explains why the source of Plaintiffs' claims cannot possibly lie in the grant agreements, though interests created by those agreements are the reason that Plaintiffs have standing to bring those statutory and constitutional claims.

*Amici* recognize that some courts, including the court below, have read the Supreme Court's summary decision in *Department of Education v. California*, 145 S.Ct. 966 (2025), to foreclose claims that in some ways might resemble some of Plaintiffs' claims. By its own terms, however, *Department of Education v. California* does not reach Plaintiff's claims here, properly construed. The Supreme Court there emphasized only that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money'" 145 S.Ct. at 968 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). And it recognized that "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." *Id.* (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988)). Both these statements support the District Court's

10

jurisdiction over this case. *Amici* also agree with the reasons for not treating *California* as binding that Judge Pillard outlined in her dissent in *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *10 (D.C. Cir. May 3, 2025), and that appear in the Brief of Amicus Curiae Legal Scholars of Federal Courts and Jurisdiction in Support of Plaintiffs-Appellees at 10-11, 16-17, *State of New York v. Donald J. Trump*, Nos. 25-1236 & 25-1413 (1st Cir.) (filed July 25, 2025).

## I.  The Remedy Appropriate to Plaintiffs' Claims Is Not Contractual in Nature.

In ruling against Plaintiffs, the District Court relied substantially on a single noun phrase in *Spectrum Leasing*, writing that the request for injunctive relief in that case should be "likened to 'the classic contractual remedy of specific performance.'" 2025 WL 1865160, at *12 (*quoting Spectrum Leasing,* 764 F.2d at 894). That phrase, which was unnecessary to *Spectrum Leasing's* holding, misconstrues contract remedies and has sown confusion in this and other circuits.[3] In fact,

---

[3] In addition to the decision below, see, e.g., *New York v. Nat'l Sci. Found.*, No. 25 CIV. 4452 (JPC), 2025 WL 2180478, at *15 (S.D.N.Y. Aug. 1, 2025) (quoting *Spectrum Leasing* and holding that the Court of Federal Claims had exclusive jurisdiction over claims regarding grant cancellations); *United States Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp.

(footnote continues on next page)

specific performance is an "extraordinary" remedy for breach. *Arbitron, Inc. v. Tralyn Broad., Inc.*, 400 F.3d 130, 135 (2d Cir. 2005); *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 637 (7th Cir. 2007); *Evans v. Neumann*, 278 F. 1013, 1014 (D.C. Cir. 1922); *Maryland Indoor Play, LLC v. Snowden Inv. LLC*, 2025 WL 1803206, at *11 (Md. July 1, 2025); *Est. of Caruso v. Caruso*, 322 A.3d 885, 895 (Pa. 2024); *Indep. Mgmt. Co. v. Anderson & Summers*, LLC, 874 A.2d 862, 867 (D.C. 2005). Specific performance is available in a contract action only when damages are

---

3d 155, 163 (D.D.C. 2025), *dismissed sub nom. United States Conf. of Cath. Bishops v. United States Dep't of State*, No. 25-5066, 2025 WL 1350103 (D.C. Cir. May 2, 2025) (same).

The Department of Justice regularly quotes this language, citing *Spectrum Leasing* or subsequent cases repeating the phrase, in its arguments to dismiss challenges to grant termination decisions for lack of subject matter jurisdiction. *See, e.g.*, Motion to Dismiss at *7, *Sustainability Inst. v. Trump*, No. 2:25-cv-02152-RMG, 2025 WL 1787997 (D.S.C. May 27, 2025); Corrected Memorandum of Law in Support of Defendants' Motion to Dismiss at *7, *Green & Healthy Home Initiatives, Inc. v. EPA*, No. 25-cv-1096-ABA, 2025 WL 1872220 (D. Md. May 21, 2025); Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction at *16, *Harris Cnty, Texas v. Kennedy*, No. 25-cv-01275, 2025 WL 1938492 (D.D.C. May 14, 2025); Defendants' Cross-Motion for Summary Judgment at *10, *12, *Amica Ctr. for Immigrant Rts. v. U.S. Dep't of Just.*, No. 25-298, 2025 WL 1808068 (D.D.C. May 9, 2025); Defendants' Combined Opposition to Plaintiffs' Emergency Motions at *5, *Massachusetts Fair Hous. Ctr. v. Dep't of Hous. & Urb. Dev.*, No. CV 25-30041-RGS, 2025 WL 1119868 (D. Mass. Mar. 21, 2025).

inadequate to protect the nonbreaching party's expectation interest. Restatement (Second) of Contracts § 359 (1981). Moreover, the injunction that Plaintiffs seek in this case is only superficially like, and at bottom fundamentally different from, specific performance.

**A.** *Spectrum Leasing*'s description of specific performance as "a classic contractual remedy" was unnecessary to its holding. *Spectrum Leasing* addressed an attempt to recast what was clearly a claim for breach of a procurement contract as a statutory violation. The government had refused to pay certain invoices, citing alleged problems with Spectrum's performance and a liquidated damages clause that covered such breaches. 764 F.2d at 892. Spectrum argued that the withholding of those payments violated the Debt Collection Act, 31 U.S.C. §§ 3701 et seq., and requested "an order compelling the government to pay money owed in exchange for goods procured." *Id.* at 894. In fact, the *Spectrum Leasing* opinion goes on to observe correctly that "Spectrum's action against the government is equivalent to a seller's action for the price of goods against a private buyer." *Id.* And although an order awarding a buyer (or grantee) the price might be described as requiring a seller (or the government) to perform its obligations under the contract,

13

both the Restatement and the Uniform Commercial Code expressly observe that payment of money owed is not specific performance but an award of damages. U.C.C. § 2-709 ("Action for the Price"); Restatement (Second) of Contracts § 347 ills. 5-7 (1981) (discussing actions for the price under the heading of "Measure of Damages in General"). The court's additional statement that Spectrum sought "the classic contractual remedy of specific performance" was an unforced error, one that has that has caused confusion in this and other cases.

**B.** The relief Plaintiffs seek in this case is not available in contract law. When a party paying for services wrongfully terminates a contract before the service provider fully performs, the service provider is entitled to recover damages equal to the contract price minus costs avoided (or that could reasonably be avoided) as a result of the breach. Restatement (Second) of Contracts § 347 ills. 5 and 6 (1981) (describing the deduction of costs avoided) & 350 ("Avoidability as a Limitation on Damages"). A service provider may bring a claim for the contract price only if they could have performed without incurring any costs. *See, e.g.*, *Kearsarge Computer, Inc. v. Acme Staple Company, Inc.*, 118 N.H. 705 (1976) (awarding contract price as damages because data processor would have

14

incurred no additional costs in performing). Sometimes a service provider may complete performance and then sue for the contract price, but they face the risk that a court will hold the service provider should have mitigated damages by stopping performance. *See, e.g.*, *Rockingham County v. Luten Bridge Co.*, 35 F.2d 301 (4th Cir. 1929).

These limitations are not technical quibbles. They go to the very essence of a service provider's contract claim, which is designed to vindicate, *and is therefore also limited by*, the service provider's net gain from the contract's joint performance. This net gain to the service provider is different from—and typically much less than—the total cost of the contract to the promisor or the total value of the completed performance, something basic texts have long emphasized when introducing expectation damages. *See, e.g.*, *Freund v. Washington Square Press, Inc.*, 34 N.Y. 2d 379 (1974), *anthologized in, for example,* JOHN P. DAWSON ET AL., CONTRACTS: CASES AND COMMENTS 125 (11th ed. 2019); BRUCE W. FRIER & JAMES J. WHITE, THE MODERN LAW OF CONTRACTS 554 (4th ed. 2019); ROBERT S. SUMMERS ET AL., CONTRACT AND RELATED OBLIGATION: THEORY, DOCTRINE & PRACTICE 270 (8th ed. 2021); DOUGLAS

J. WHALEY & DAVID HORTON, CASES, PROBLEMS, AND MATERIALS ON CONTRACTS 246 (9th ed. 2023).

Even an order of specific performance, were it available, remains fundamentally different from the reinstatement of the grants Plaintiffs seek.[4] In principle, a court in an action against a private party might order specific performance of a contract to provide services when the party paying for services wrongfully terminates before the service provider fully performs. Restatement (Second) of Contracts § 358, ills. 1 (1981) (city ordered to perform contract to exclusively purchase water from water company that had completed building water supply system). But courts rarely order specific performance of a contract to provide services where the services have not already been substantially performed. This is for two reasons: problems of supervision and the principle that "[a] court will not compel performance if a substantial part

---

[4] The Court of Federal Claims is not generally authorized to provide specific performance. *United States v. King*, 395 U.S. 1, 4 (1969) ("[C]ases seeking relief other than money damages from the Court of Claims have never been within its jurisdiction." (internal punctuation removed)); *Massie v. United States*, 226 F.3d 1318, 1321 (Fed. Cir. 2000) ("[T]here is no provision in the Tucker Act authorizing the Court of Federal Claims to order equitable relief.") The point is that the remedy Plaintiffs request is not the equivalent of such an order.

of the return performance has not been rendered." E. Allan Farnsworth, Farnsworth on Contracts (3d ed. 2004), § 12.7, at 182.

Nor would the test for specific performance be the same as that required for Plaintiffs to receive injunctive relief here. A plaintiff's claim for specific performance does not depend on the reasons for which the defendant breached and certainly not on the wrongfulness of the defendant's conduct; but it does require the plaintiff to show that money damages cannot adequately vindicate its interest in the contract and that an order of specific performance will not impose an inequitable or disproportionate burden on the breaching party. *See* Restatement (Second) of Contracts §§ 359, 364; *Van Wagner Advertising Corp. v. S & M Enterprises,* 67 N.Y.2d 186 (1986). The questions in this case are precisely the opposite. The arbitrary and capricious nature of the government's grant cancellations is an essential part of Plaintiffs' statutory and constitutional claims for injunctive relief; and the grant of such relief does not require Plaintiffs to show either that a court cannot compute their net gains from the grants or that reinstating the grants would not inequitably burden the government.

Finally, the nature of an order for specific performance differs from the injunctive relief appropriate to Plaintiffs' claims. An order of specific performance is an order to the defendant to do or not do a specific act. It is not a general order to perform a contract, E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS (3d ed. 2004), § 12.5, at 170, much less an order to reinstate a government-funded program. And a plaintiff who wins an order of specific performance in a contract dispute is free to sell its award back to the breaching defendant, terminating their arrangement for a negotiated sum. *N. Indiana Pub. Serv. Co. v. Carbon Cnty. Coal Co.*, 799 F.2d 265, 279 (7th Cir. 1986) (Posner, J.) (after an award of specific performance parties might "negotiat[e] a cancellation of the contract and with it a dissolution of the order of specific performance"). If Plaintiffs in this case succeed, they plainly may not negotiate a cash payout from the government in exchange for abrogating the projects their grants support.

In short, there exists no remedy in contract similar to the reinstatement of the grants that Plaintiffs seek.[5]

---

[5] Modern contract law allows a claim for a declaratory judgment. Restatement (Second) of Contracts § 345(e) (1981); 28 U.S.C. § 2201. The

(footnote continues on next page)

**C.** These doctrinal differences stem from a more fundamental difference. The purpose of contract remedies is not to require performance, but to vindicate the nonbreaching party's contractual rights, most often through an award of damages. Contract remedies generally are substitutionary and not specific. The purpose of the injunctive relief Plaintiffs seek, in distinction, is to ensure that OJP follows the law.

The Federal Circuit recognized the difference between substitutionary and specific remedies in *Massie v. United States*, 226 F.3d 1318 (Fed. Cir. 2000). The government breached its obligation to ensure the plaintiff's son received a lifetime annuity when the company providing the annuity became bankrupt and the annuity was restructured to reduce the payment. Substitutionary contract damages with respect to future underpayments would be a lump sum payment, measured either by the present value of future underpayments or by the

---

effect of such a declaration would be clarify that the purported termination was not effective and that the contract was still effective. It would not, however, be the equivalent of an injunction to reinstate the grant. This can be seen in the fact that were the government to continue to treat the contract as a nullity, the appropriate action would be one for breach. It would not be a claim for contempt of court.

price of purchasing another annuity to make up the difference. The Court of Federal Claims, however, had ordered the government to make payments "in accordance with the terms of the original settlement agreement."[6] 226 F.3d at 1321. On appeal, the Federal Circuit held this remedy was outside the Court of Federal Claims' jurisdiction because it was a specific remedy:

> By resurrecting the terms of a contract, which had been materially breached and was no longer in force, allowing it to govern the amount of and the manner by which the monetary award was to be paid, and by compelling Massie to accept performance under those terms, the trial court fashioned a form of specific performance, equitable relief, which it had no authority to order. *Id.*

The lump sum that was appropriate in *Massie* was a substitute for performance that represents its value to the plaintiff, not performance itself.

This substitutionary character of contract remedies is the basis of the Holmesian dictum, "The duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it,— and nothing else." 110 HARV. L. REV. at 995. Although contract theorists

---

[6] *Massie* is an unusual case because the plaintiff preferred the contractual damage remedy (a lump sum payment) to an order compelling the government to perform its obligation.

differ in their understanding of the law's preference for compensatory damage awards,[7] no one doubts its practical effect: the law does not compel performance of a party's primary contractual duty. "The traditional goal of the law of contract remedies has not been compulsion of the promisor to perform his promise but compensation of the promisee for the loss resulting from breach." Restatement (Second) of Contracts Ch. 16 Introductory Note (1981).[8]

Matters are of course quite different with respect to the executive's obligations to comply with the U.S. Constitution and governing statutes and regulations. OJP does not have a choice between, on the one hand, following the APA and the Constitution and, on the other, violating those laws and paying damages. Hence the appropriateness of the injunctive relief Plaintiffs seek, which would effectively compel OJP to follow the

---

[7] *Compare* Daniel Markovits & Alan Schwartz, *The Myth of Efficient Breach: New Defenses of the Expectation Interest*, 97 VA. L. REV. 1939 (2011), *with* Gregory Klass, *To Perform or Pay Damages*, 98 VA. L. REV. 143 (2012).

[8] Most civil codes, in distinction, express a strong preference for specific performance, often on the principle of *pacta sunt servanda* (agreements are to be kept). *See* Ronald J. Scalise Jr., *Why No "Efficient Breach" in the Civil Law?: A Comparative Assessment of the Doctrine of Efficient Breach of Contract*, 55 AM. J. COMP. L. 721 (2007).

law. Such a remedy is not contractual in nature but statutory and constitutional.

## II. The Grant Agreements Are Not the Source of Plaintiffs' Claims.

*Megapulse* provides that whether a claim is at its essence a contract action for purposes of the Tucker Act depends not only on "the type of relief sought (or appropriate)" but also on "the source of the rights upon which the plaintiff bases its claims." 672 F.2d at 968. Although the *Megapulse* opinion does not expand on the meaning of "source," this Court rejected the proposition that "any case requiring some reference to or incorporation of a contract is necessarily on the contract and therefore directly within the Tucker Act." 672 F.2d at 967-68. Subsequent decisions have further clarified that "the source of the rights" is not contractual merely because a plaintiff has standing because of a contract or where the claim exists only in virtue of a contract. "[L]itigants may bring statutory and constitutional claims in federal district court even when the claims depend on the existence and terms of a contract with the government." *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992).

At the same time, it is important to prevent plaintiffs pursuing what are, at bottom, contract claims from using artful pleading to evade the Tucker Act and the Court of Federal Claims' exclusive jurisdiction over contract actions against the federal government. "Because . . . forum shopping circumvents a primary purpose of the Act—to ensure that a central judicial body adjudicates most claims against the United States Treasury, we have stated that '[j]urisdiction under the Tucker Act cannot be avoided by . . . disguising a money claim' as a claim requesting a form of equitable relief." *Kidwell v. Dep't of Army, Bd. for Correction of Mil. Recs.*, 56 F.3d 279, 284 (D.C. Cir. 1995) (internal citations omitted and quoting *Van Drasek v. Lehman*, 762 F.2d 1065, 1071 n.11 (D.C. Cir. 1985)).

The vast difference between the appropriate and available *remedy* in a contract case and the remedy appropriate to Plaintiffs' claims, discussed above, suffices to show that their claims are not contractual in nature and to ensure that Plaintiffs are not engaged in mere artful pleading. That said, the other prong of the *Megapulse* rule makes relevant several clear indicia that the *source* of Plaintiffs' claims is not in

the grant agreements that create the interests that give them standing to bring them.

**A.** Whereas liability for breach is strict, the resolution of Plaintiffs' statutory and constitutional claims will perforce turn on *how* and *why* OJP decided to cancel the grants at issue.

Several of Plaintiffs' statutory and constitutional claims require a finding of fault. To show that that the grant terminations violated the APA because they were contrary to law, Plaintiffs must show that OJP's stated *reasons* for those terminations—a post-award change in agency priorities—did not satisfy the requirements of OMB's Uniform Administrative Requirements, 2 C.F.R. § 200.340. Compl. ¶ 119, JA34. To show that the mass terminations violated the APA by being arbitrary and capricious, Plaintiffs must show that OJP has not provided *a reasoned, evidence-based explanation* of the terminations or its asserted change in priorities. Compl. ¶ 130, JA35-36. To succeed in their constitutional due process claims, Plaintiffs must show that *the manner in which OJP reached its decision* to terminate did not provide grant recipients constitutionally required notice and an opportunity to be heard. Compl. ¶ 86, JA28.

24

None of those considerations would be relevant were Plaintiffs claiming breach. As the Reporter for the Second Restatement observed, "our system of remedies for breach of contract is one of strict liability and not of liability based on fault." E. Allan Farnsworth, *Legal Remedies for Breach of Contract*, 70 COLUM. L. REV. 1145, 1147 (1970); *see also* Restatement (Second) of Contracts Ch. 16 Introductory Note (1981) ("'Willful' breaches have not been distinguished from other breaches."). In the vast majority of contracts cases, what matters to determining whether there was a breach is only *that* the defendants failed to perform, not *why* or *how* they decided to breach.[9] This is fundamentally different from Plaintiffs' burden in this case.

**B.** Plaintiffs' statutory and constitutional claims do not turn on the parties' intent in making the agreements or the agreements' terms.

Contract law is all about effectuating the parties' intent when they make a contract. It therefore has rules of interpretation designed to recapture the parties' intent and formal requirements (like Statutes of

---

[9] Parties' reasons for nonperformance can sometimes figure into determining whether their breach was material, determining the proper measure of damages, or other matters. *See* George M. Cohen, *The Fault Lines in Contract Damages*, 80 VA. L. REV. 1225 (1994). Those contract-law questions are not implicated by the claims in this case.

Fraud and the parol evidence rule) designed to encourage parties to make their intent clear and to better enable courts reliably to determine it. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (in contract interpretation, "the parties' intentions control"); Gregory Klass, *Two Forms of Formalism in Contract Law*, 46 CARDOZO L. REV. 369 (2024). Hanoch Dagan & Mark P. Gergen, *Autonomy and Form*, 53 HOFSTRA LAW REV. 1 (2024). The resolution of an action for breach always begins with an inquiry into the parties' plans, often as memorialized in a contractual writing.

Resolution of the claims in this case involves neither an inquiry into the intent of the grantor and grantees when the agreements were made nor an inquiry into the terms of those grant agreements. This is not a contingent fact. The parties' intent and the terms of the grant agreements are irrelevant because Plaintiffs' claims rest on statutory and constitutional requirements that the government does not have the power to contract away. Two examples illustrate:

First, consider the relevance of any termination clauses in the agreement. If Plaintiffs were bringing an action for breach, it would be crucial to know whether the grant agreements included termination

clauses, if so what those termination clauses provided, and whether OJP's actions complied with those clauses. *See, e.g.*, *Ingersoll-Rand*, 780 F.2d at 76-77. Here, the content of any termination clauses is relevant only to Plaintiffs' argument that section 200.340(a) of OMB's Uniform Administrative Requirements requires the government to expressly state permissible reasons for termination in such a clause. The issue is whether the termination clauses complied with the statutory requirements, not whether OJP's grant cancellations violated those clauses.

Second, consider the facts relevant to Plaintiffs' request for class certification. If this were a contract action, determining whether the proposed class satisfies Rule 23's commonality, typicality, predominance, superiority, and adequacy requirements would involve an examination of the individual grant agreements. If there were differences among the wording of those agreements, those differences might preclude a finding of especially of commonality, preponderance, or typicality. *See, e.g.,* *Rodman v. Safeway, Inc.*, No. 11-CV-03003-JST, 2014 WL 988992, at *5 (N.D. Cal. Mar. 10, 2014), *aff'd*, 694 F. App'x 612 (9th Cir. 2017) (emphasizing when certifying class that the alleged contractual writings

were identical); *Vedachalam v. Tata Consultancy Servs.*, Ltd., No. C 06-0963 CW, 2012 WL 1110004, at *9 (N.D. Cal. Apr. 2, 2012) (same). Even if the grant language were identical, ambiguities might entail that differences in course of performance or course of dealings in the *administration* of the grants would preclude a finding of commonality, preponderance, or typicality. *See, e.g.*, *Aronstein v. Massachusetts Mut. Life Ins. Co.*, 15 F.4th 527, 535 (1st Cir. 2021) (denying class certification because ambiguities in contract language would require considerations of parol evidence that might differ among class members). None of those factors is relevant to certification of the class to litigate Plaintiffs' statutory and constitutional claims. The reason, again, is that those claims turn not on the substance of the grant agreements, but rather on whether OJP properly exercised its powers under the APA and the Constitution.

**C.** The source of Plaintiffs' claims can be seen in who has standing to bring them.

Generally, only a party to a contract has standing to sue for breach. For a non-party to have standing to sue, they must establish either that they are an intended third-party beneficiary, Restatement (Second) of

Contracts § 304 (1981), or that an assignable contract right has been assigned to them, *id.*, §§ 316-341.

Standing to bring any of Plaintiffs' statutory or constitutional claims does not require an inquiry into whether they are intended third-party beneficiaries or assignees. In another grant cancellation case, for example, *American Public Health Association v. National Institutes of Health*, No. 25-1611, 2025 WL 2017106 (1st Cir. July 18, 2025), the plaintiffs included not only grant recipients but also states whose public universities and colleges depend on grant funding to support research projects. Those states were neither third-party beneficiaries nor assignees. Plaintiffs in this case allege *inter alia* that some grant funds went to subrecipients, that grants funded violence prevention programs at hospitals, that the termination of one grant deprived deaf crime victims of sign-language interpretation services, and that grants were used to help cities and states improve their criminal justice systems. Brief of Plaintiffs-Appellants at 8-10. It is highly unlikely that any of those persons or entities would qualify as intended third-party beneficiaries of the cancelled grants, much less as assignees. Many, however, would arguably have standing to raise the statutory and

29

constitutional challenges Plaintiffs bring. More to the point, the test for whether they would have standing would be entirely different from the test for whether they are intended third-party beneficiaries or assignees. The test for standing does not depend on the intent of the government and the grantees in making the original grants, much less their subsequent assignment.

For all these reasons, the adjudication of Plaintiffs' claims will look nothing like the adjudication of an action for breach of contract. The vast differences between the factual and legal questions the District Court will have to answer here, as compared to an action for breach, demonstrate that the source of their claims lies not in the grant agreements, but in the executive's obligation to follow the law.

## CONCLUSION

Each of the above factors distinguishes Plaintiffs' claims from the cases of artful pleading that this Court considered in *Spectrum Leasing* and *Ingersoll-Rand*. Because Plaintiffs' claims and the remedies that would vindicate them are so obviously noncontractual under the standard this Court set forth in *Megapulse v. Lewis*, the District Court has subject matter jurisdiction to hear them.

30

Dated: August 18, 2025                    Respectfully submitted,

                                          /s/ *Jeffrey R. Babbin*
                                          Jeffrey R. Babbin
                                          WIGGIN AND DANA LLP
                                          265 Church Street
                                          New Haven, CT 06510
                                          (203) 498-4400
                                          jbabbin@wiggin.com

                                          *Attorneys for Amici Curiae*
                                          *Mark Gergen, Gregory Klass,*
                                          *and Daniel Markovits*

## CERTIFICATE OF COMPLIANCE

### Federal Rules of Appellate Procedure Form 6.
### Certificate of Compliance With Rule 32(a)

### Certificate of Compliance With Type-Volume Limitation,
### Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App.
    P. 32(a)(7)(B) and 29(a)(5) because:

☒  This brief contains 6,309 words, excluding the parts of the
    brief exempted by Fed. R. App. P. 32(f) **or**

☐  This brief uses a monospaced typeface and contains [*state the
    number of*] lines of text, excluding the parts of the brief
    exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App.
    32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
    because:

☒  This brief has been prepared in a proportionally spaced
    typeface using Microsoft Office 365 in 14-point type Century
    Schoolbook type style, **or**

☐  This brief has been prepared in a monospaced typeface using
    [*state name and version of word processing program*] with
    [*state number of characters per inch and name of type style*].

Dated: August 18, 2025          By:    /s/ *Jeffrey R. Babbin*
                                        Jeffrey R. Babbin