**ORAL ARGUMENT SET FOR OCTOBER 14, 2025**

**No. 25-5248**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

VERA INSTITUTE OF JUSTICE ET AL.,
*Plaintiffs-Appellants,*

v.

DEPARTMENT OF JUSTICE, ET AL.,
*Defendants-Appellees,*

---

On Appeal from the United States District Court
for the District of Columbia
No. 25-cv-1643
The Hon. Amit P. Mehta, U.S. District Judge

---

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS**

---

Joshua Perry
Joshua Stanton
E. Danya Perry
Perry Law
445 Park Avenue, 7th Floor
New York, NY 10022
(212) 251-2619
jperry@danyaperrylaw.com

Lisa Newman
Joshua Salzman
Simon C. Brewer
Jennifer Fountain Connolly
Cortney Robinson
Somil Trivedi
Brian Netter
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
lnewman@democracyforward.org

*Counsel for Plaintiffs-Appellants*

Sept. 8, 2025

# TABLE OF CONTENTS

Page

GLOSSARY OF ABBREVIATIONS............................................................vi

INTRODUCTION AND SUMMARY OF ARGUMENT............................1

ARGUMENT ........................................................................................3

I.   Plaintiffs APA Claims Should Not Have Been Dismissed. .............3

    A.   Under this Court's longstanding framework, Plaintiffs' APA claims do not sound in contract ...............................................3

    B.   The disputed grants are not contracts ..................................13

    C.   Grant termination decisions are judicially reviewable ........16

    D.   Plaintiffs' APA claims are not only viable, but likely to succeed on the merits .............................................................19

II.   The District Court Erred In Dismissing Plaintiffs' Constitutional Claims, Which Are Likely To Succeed ...........................................25

    A.   Constitutional claims belong in district court. ....................26

    B.   Plaintiffs have a protected property interest.......................26

    C.   Due process requires pre-deprivation notice and a hearing.30

III.   This Court Should Grant A Preliminary Injunction......................32

CONCLUSION ...................................................................................34

CERTIFICATE OF COMPLIANCE

CORPORATE DISCLOSURE STATEMENT

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

## CASES

*A.A.R.P. v. Trump,* 145 S. Ct. 1364 (2025) .............................................33

*Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314
(D.C. Cir. 2024) ...................................................................................32

*Am. Med. Ass'n v. Reno*, 57 F.3d 1129 (D.C. Cir. 1995) ..........................19

*Antolok v. United States*, 873 F.2d 369 (D.C. Cir. 1989)..........................29

*Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205*,
389 F.3d 685 (7th Cir. 2004) ..............................................................31

*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972)....................29

*Boaz Hous. Auth. v. United States*, 994 F.3d 1359 (Fed. Cir.
2021) ....................................................................................................13

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) ..................................5, 8, 9

*Boyd v. United States*, 134 F.4th 1348 (Fed. Cir. 2025).........................14

*C&E Services, Inc. of Washington v. D.C. Water & Sewer
Authority*, 310 F.3d 197 (D.C. Cir. 2002).........................................29

*Cameron v. EMW Women's Surgical Ctr.*, 595 U.S. 267 (2022).............30

*Climate United Fund v. Citibank, N.A.*, 2025 WL 2502881 (D.C.
Cir. Sept. 2, 2025) .........................................................................4, 15

*Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330 (Fed. Cir.
2021) ....................................................................................................15

*Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099 (D.C. Cir.
2022) ...........................................................................................4, 5, 6, 10

*Dep't of Com. v. New York*, 588 U.S. 752 (2019)....................................18

*Dep't of Educ. v. California*, 145 S. Ct. 966 (2025)...........................11, 16

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*DHS v. Regents of Univ. of Cal.*, 591 U.S. 1 (2020) ................................25

*Gov't of Manitoba v. Bernhardt*, 923 F.3d 173 (D.C. Cir. 2019) ............30

*Ingersoll-Rand Co. v. United States*, 780 F.2d 74 (D.C. Cir. 1985) .........................................................................................7, 8

*Larionoff v. United States*, 533 F.2d 1167 (D.C. Cir. 1976) ..................29

*LeBlanc v. United States*, 50 F.3d 1025 (Fed. Cir. 1995) ........................26

*Lincoln v. Vigil*, 508 U.S. 182 (1993) ......................................................17

*Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189 (2001) ................30, 31

*Lummi Tribe of the Lummi Rsrv. v. United States*, 870 F.3d 1313 (Fed. Cir. 2017) .......................................................................15

*Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982)...................3, 4, 8

*NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31 (D.C. Cir. 2015)...........................................................................................27

*NIH v. Am. Pub. Health Ass'n*, No. 25A103, 2025 WL 2415669 (U.S. Aug. 21, 2025) .................................................11, 13, 14, 26, 33

*Shawnee Tribe v. Mnuchin*, 984 F.3d 94 (D.C. Cir. 2021) ...............32, 33

*Spectrum Leasing Corp. v. United States*, 764 F.2d 891 (D.C. Cir. 1985)..............................................................................................7

*Tootle v. Sec'y of Navy*, 446 F.3d 167 (D.C. Cir. 2006) ...........................26

*Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598 (D.C. Cir. 1992)...............................................................26

*Trump v. Boyle*, 145 S. Ct. 2653 (2025) ..................................................11

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020)...........................16

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Urb. Sustainability Dirs. Network v. USDA.*, 2025 WL 2374528
(D.D.C. Aug. 14, 2025) ............................................................15, 18

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9
(2018) ...............................................................................................17

*Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817 (D.C.
Cir. May 3, 2025) ............................................................................12

*Widakuswara v. Lake*, No. 25-5144, 2025 WL 1521355 (D.C.
Cir. May 28, 2025) ..........................................................................12

## STATUTES

5 U.S.C. § 702 ...........................................................................................8

5 U.S.C. § 704 ...........................................................................................9

5 U.S.C. § 706 ...........................................................................................4

## RULES AND REGULATIONS

2 C.F.R. § 200.203 ..................................................................................20

2 C.F.R. § 200.211 ..................................................................................22

2 C.F.R. § 200.340 ....................................................................3, 19, 21, 27

2 C.F.R. § 2800.101 ................................................................................28

78 Fed. Reg. 78,590 (Dec. 26, 2013) ....................................................20

Exec. Order No. 14,332, 90 Fed. Reg. 38,929 (Aug. 7, 2025) .................23

Guidance for Grants and Agreements, 85 Fed. Reg. 49,506
(Aug. 13, 2020) ..............................................................................20

Guidance for Federal Financial Assistance, 89 Fed. Reg. 30,046
(Apr. 22, 2024)...............................................................................20

## TABLE OF AUTHORITIES
### (continued)

Page(s)

## OTHER AUTHORITIES

EPA, General Terms and Conditions, https://perma.cc/CRC9-
PZ9Q (Oct. 1, 2023)................................................................22

OJP, General Conditions for OJP Awards in FY 2024,
https://perma.cc/X7AF-M8MK (Aug. 9, 2024) ................................23

# GLOSSARY OF ABBREVIATIONS

APA                    Administrative Procedure Act

CFC                    Court of Federal Claims

NOFO                   Notice of Funding Opportunity

OJP                    Office of Justice Programs

## INTRODUCTION

The Office of Justice Programs (OJP) unlawfully adopted a novel regulatory interpretation, which OJP then relied upon in terminating grants to hundreds of organizations that provide service to crime victims and communities at risk of violence. These mass terminations were implemented arbitrarily, were inconsistent with the new priorities OJP purported to have adopted, were neither reasonable nor reasonably explained, and showed utter disregard for the substantial reliance interests of grantees and the communities that rely on their services. Plaintiffs, who represent a putative class of terminated grantees, seek declaratory and injunctive relief establishing that the agency's novel regulatory interpretation is unlawful and vacatur of the unlawful agency actions (*i.e.*, the grant terminations).

OJP, like the district court, conflates this paradigmatic Administrative Procedure Act (APA) suit with inapposite cases in which government contractors have sought to circumvent the exclusive jurisdiction of the Court of Federal Claims (CFC) under the Tucker Act by dressing contract claims in APA garb. This suit presents classic questions of administrative law, and, under this Court's precedents, the

1

district court was a proper forum for their resolution. That is particularly true because the awards here are not even contracts within the jurisdiction of the CFC.

OJP emphasizes that the Supreme Court has issued a pair of orders on its emergency docket suggesting that challenges to other grant terminations are likely within the exclusive jurisdiction of the CFC, but those orders are not conclusive of the merits. If anything, they suggest that at least Plaintiffs' challenge to OJP's novel regulatory interpretation belongs in district court.

OJP also boldly claims it has unreviewable discretion to terminate grants, but there are standards for judging OJP's actions here. Indeed, on the merits, OJP's actions were plainly unlawful and contravened Plaintiffs' due process rights.

Given the significant harm that Plaintiffs and their communities are experiencing, this Court should preliminarily enjoin the unlawful grant terminations. At minimum, it should enjoin re-obligation of the disputed grant funds until this case can be decided on the merits.

# ARGUMENT

## I.    Plaintiffs' APA Claims Should Not Have Been Dismissed

### A.    Under this Court's longstanding framework, Plaintiffs' APA claims do not sound in contract

1. OJP acknowledges (at 16) that, under this Court's binding caselaw, the question of whether a non-contract claim is impliedly precluded by the Tucker Act is governed by the two-part test articulated in *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982).  Both *Megapulse* factors confirm that this case involves genuine APA claims.

Each of Plaintiffs' three APA theories asserts "rights" found in statutes and regulations, not grant documents.  *Megapulse*, 672 F.2d at 968.  *First*, Plaintiffs allege that the government exceeded its authority under 2 C.F.R. § 200.340(a)(4), which withholds authority to terminate based on post-award changes to agency priorities (regardless of the content of specific grant agreements).  *Second*, Plaintiffs allege that, pursuant to Section 200.340(b), no terminations may be made under Section 200.340(a)(4) unless such termination authority is "clearly and unambiguously authorized" (regardless of otherwise applicable

3

principles of contract law).[1]  *Third*, Plaintiffs allege that the challenged termination decisions contravened their right to be free from arbitrary and capricious exercises of agency power, a right established by the APA, 5 U.S.C. § 706(2)(A).  "Resolution of the claims in this case involves neither an inquiry into the intent of the grantor and grantees when the agreements were made nor an inquiry into the terms of those grant agreements."  Contract Law Scholars Amicus Br. 26.

Plaintiffs also seek classic APA "remedies," not "monetary damages." *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1107 (D.C. Cir. 2022); *see also Megapulse*, 672 F.2d at 968.  Plaintiffs asked the court to set aside unlawful agency action and to issue declaratory and injunctive relief confirming the limits on the government's authority to terminate agreements based on changed agency priorities or in the absence of reasoned decisionmaking.  JA36-JA38.  While OJP portrays

---

[1] In *Climate United Fund v. Citibank, N.A.*, 2025 WL 2502881, at *5 (D.C. Cir. Sept. 2, 2025), a panel of this Court concluded that a claim resembling Plaintiffs' second contrary-to-law claim was precluded by the Tucker Act.  Because that decision was issued in a preliminary injunction posture, and thus assessed only likelihood of success on the merits, and because the time for rehearing in that case has not yet run, we present our arguments in full.  To the extent the Court deems *Climate United* conclusive as to any of Plaintiffs' arguments, Plaintiffs respectfully preserve their challenge for further review.

the suit as seeking nothing more than "an order compelling the government to resume payments" and to perform its obligations under the grant award (OJP Br. 15), only one of the seventeen items in the complaint's Prayer for Relief (paragraph N) arguably fits that characterization.  JA37.  That one request cannot strip the district court of jurisdiction over the entire suit, particularly when Plaintiffs have brought constitutional claims that would serve as a proper predicate for such relief, even were it unavailable under the APA.

Like many litigants in APA cases, Plaintiffs expected that success would result in financial gain because vacatur of the terminations would presumably lead to renewed payments.  But this Court has "explicitly rejected" the proposition that a claim seeks monetary relief merely because a downstream effect of the plaintiff's success would be "significant financial gain."  *Crowley*, 38 F.4th at 1112.  That conclusion follows from the Supreme Court's recognition that when "orders are for specific relief . . . rather than for money damages . . . they are within the District Court's jurisdiction under § 702's waiver of sovereign immunity."  *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988).

The *Megapulse* inquiry is particularly straightforward because Plaintiffs seek relief that has value to them independent of any funds they will receive from recission of the unlawful grant terminations. An organization's status as an OJP grantee confers value, both in terms of the credibility and access it confers and because it favorably positions an organization to compete for future grants. Pls. Br. 27. Moreover, several Plaintiffs routinely compete for and receive grants from OJP and other government agencies that issue awards subject to Section 200.340(a). Pls. Br. 28-29; JA254-JA255. Therefore, they have an interest in obtaining declaratory relief that OJP's "interpretation that 2 C.F.R. § 200.340(a)(4) allows OJP to terminate a grant based on a 'change' in agency priorities" is unlawful and in having the Defendants enjoined from terminating grants on that basis in the future. JA36-JA37. Because this relief would have "considerable value apart from and is not negligible in comparison to any potential monetary recovery," the second *Megapulse* factor confirms the district court's jurisdiction. *See Crowley*, 38 F.4th at 1113.[2]

---

[2] Plaintiffs argued in district court that prospective relief enjoining the government's interpretation of Section 200.340 would have independent value. JA461.

2. OJP barely discusses the *Megapulse* factors. Instead, it seeks to short-circuit the inquiry by insisting that this case is indistinguishable from two cases in which the Tucker Act was found applicable. OJP Br. 19-21 (discussing *Spectrum Leasing Corp. v. United States*, 764 F.2d 891 (D.C. Cir. 1985)*,* and *Ingersoll-Rand Co. v. United States*, 780 F.2d 74 (D.C. Cir. 1985)). But as our opening brief explained (at 29-31), both cases are distinguishable. OJP disparages this discussion as "half-hearted[]" (OJP Br. 20), but makes no effort to engage with that analysis.

To reiterate, in *Spectrum Leasing*, a government contractor sought "an order compelling the government to pay money owed in exchange for goods procured under an executory contract." 764 F.2d at 894. That case bears no resemblance to a putative class action challenging the lawfulness of OJP's adoption of a novel policy of terminating grants based on changed priorities and the arbitrary exercise of that newly claimed authority in terminating hundreds of grants *en masse.*

In *Ingersoll-Rand*, the Court likewise did not announce a categorical rule that any claim alleging a regulatory violation that could also be conceptualized as a breach of contract is subject to the Tucker Act. Rather, after affirming that the *Megapulse* analysis turns on "the facts of

each case," the Court conducted a fact-specific inquiry and concluded that the suit was "within the unique expertise of the Court of Claims." *Ingersoll-Rand*, 780 F.2d at 77-78. This case, by contrast, focuses on questions of administrative law within the expertise of the district courts. Overreading *Ingersoll-Rand* would bring it into conflict with *Megapulse*, which rejected the premise that Tucker Act preclusion is applicable in a suit alleging a statutory violation "simply because that same action might also amount to a breach of contract." *Megapulse*, 672 F.2d at 971.

OJP's position is also inconsistent with *Bowen*, which recognized that a suit is not seeking monetary relief, and can properly be brought under the APA, when any payment resulting from the court's review "is a mere by-product of that court's primary function of reviewing the [government's] interpretation of federal law." 487 U.S. at 910. OJP attempts to evade *Bowen* on the ground that it concerned 5 U.S.C. § 702's limitation on the use of the APA to obtain "money damages," rather than that same provision's exclusion when another statute impliedly forbids relief. OJP Br. 28-29. But *Bowen*'s recognition that relief of the type sought here is non-monetary informs the second *Megapulse* factor. Moreover, OJP's dismissive treatment of *Bowen* is particularly

8

unwarranted given that a separate issue in the case (concerning the applicability of 5 U.S.C. § 704) required the Court to specifically consider whether Massachusetts might be able to bring its claim under the Tucker Act, and the Court concluded that the suit could go forward under the APA even if the CFC provided an (inadequate) alternative forum. *Bowen*, 487 U.S. at 901-08.

OJP also notes that *Bowen* "did not involve a contract claim." OJP Br. 28. But, of course, neither does this case. If the relevant test is whether a suit could be conceptualized as a breach-of-contract action, *Bowen* itself might well have been precluded. As the *Bowen* dissent noted, Massachusetts might conceivably have "invoke[d] the Claims Court's contractual jurisdiction." 487 U.S. at 923 (Scalia, J., dissenting).

3. OJP fares no better when discussing the specific APA claims at issue. OJP does not appear to dispute that Plaintiffs' claim that Section 200.340(a)(4) precludes terminations based on changed agency priorities can be resolved without reference to any specific agreement. OJP nonetheless insists that this is still a disguised contract claim because it "presupposes a federal contractual agreement." OJP Br. 25. But this Court has squarely rejected the premise that a dispute sounds in contract

9

merely because plaintiff "would have no claims to assert" absent a government contract. *Crowley*, 38 F.4th at 1110.

OJP emphasizes that Plaintiffs' second contrary-to-law claim—which asserts that the relevant termination authority was not incorporated into the relevant agreement—does require review of Plaintiffs' grant agreements. OJP Br. 25. But when the right asserted derives from a regulation external to the contract, the Tucker Act is not implicated merely because resolution of the claim requires review of a contract. *See* Pls. Br. 26. In any event, this claim, too, presents a straightforward question of whether OJP's interpretation of the termination provision is lawful.

As for the arbitrary-and-capricious claim, OJP broadly observes (at 26-27) that this Court has held that Tucker Act preclusion can apply to arbitrary-and-capricious claims that are merely recast contractual disputes. No doubt. But OJP does not explain why the specific claims here, which allege that OJP engaged in *en masse* terminations without reasoned decisionmaking or consideration of reliance interests (JA35-JA36) fall within that prohibition. This type of arbitrary action is prohibited by the APA, not Plaintiffs' grants, and the full extent of OJP's

arbitrariness is only revealed when the terminations are reviewed collectively rather than individually.

4. OJP emphasizes that the Supreme Court has twice stayed district court orders intended to enforce government obligations to pay money pursuant to terminated grants. *NIH v. Am. Pub. Health Ass'n*, No. 25A103, 2025 WL 2415669, at *1 (U.S. Aug. 21, 2025); *Dep't of Educ. v. California*, 145 S. Ct. 966 (2025). Because such orders "inform how a court should exercise its equitable discretion in like cases," *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025), Plaintiffs agree that this Court cannot grant a preliminary injunction like those stayed by the Supreme Court on the basis of Plaintiffs' APA (but not constitutional) claims. But "interim orders are not conclusive of the merits." *Id.* The Supreme Court offered predictions that the government would likely prevail on its Tucker Act defenses, but both suits were permitted to proceed. If the Supreme Court's orders were not even dispositive in the very cases in which they were issued, they cannot "control[] this case." OJP Br. 24. This Court has a continuing obligation to apply its own judgment and still-binding precedents.

Moreover, both *APHA* and *California* involved only arbitrary-and-capricious claims.  Accordingly, in analysis OJP does not acknowledge or refute, the district court deemed *California* inapplicable to Plaintiffs' contrary-to-law claims.  JA568.  That distinction is well founded because "[i]f a plaintiff's claim depends on interpretations of statutes and regulations rather than the terms of an agreement negotiated by the parties, the claim is not in essence contractual."  *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *12 (D.C. Cir. May 3, 2025) (Pillard, J., dissenting); *see also Widakuswara v. Lake*, No. 25-5144, 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025) (en banc) (endorsing the reasoning of Judge Pillard's panel-stage dissent).  The Supreme Court's orders should not be extended to distinguishable claims that the challenged grant terminations violated binding regulations.

At a minimum, the partial stay in *APHA* confirms that the district court erred in dismissing this suit in *toto*.  In *APHA*, five Justices agreed that "the District Court was likely correct to conclude that it had jurisdiction to entertain an APA challenge to . . . guidance" documents articulating the agency's funding priorities implemented through the

grant terminations. 2025 WL 2415669, at *2 (Barrett, J., concurring); *see id.* at *3 (Roberts, C.J., concurring in part).

Plaintiffs here have analogously challenged OJP's new policy of terminating ongoing grants based on changed agency priorities and have sought declaratory relief that OJP's novel interpretation of Section 200.340(a)(4) as authorizing such terminations is unlawful. JA36. Relief that prospectively shields grantees from the government's novel policy of terminating grants based on changed priorities would have generally applicable implications beyond the reinstatement of specific grants. If nothing else, that aspect of Plaintiffs' suit should have been permitted to proceed.

## B. The disputed grants are not contracts

The Tucker Act also cannot divest the district court of jurisdiction because the grant agreements are not contracts within the CFC's jurisdiction. Pls. Br. 35-40. OJP has implemented its "subsidy programs without employing contracts as a vehicle." *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021). OJP's efforts to show otherwise are unavailing.

13

*First,* the grants' written terms do not establish "all the hallmarks of an ordinary contract." OJP Br. 31. OJP's argument repeats the errors the Federal Circuit corrected in *Boyd v. United States*, 134 F.4th 1348, 1354 (Fed. Cir. 2025), which rejected the idea a written document setting forth the terms of a government payment and using words "like 'offer' and 'acceptance'" constituted a contract. Defendants identify no law or policy that speaks in the language of contract and that would indicate contractual intent. *See id.* at 1353; Pls. Br. 35-37.

*Second*, the grants do not provide contractual consideration. OJP notes that a party in *APHA* unsuccessfully made a similar argument, but the Court did not suggest that all grants are supported by consideration, emphasizing that it was evaluating "research-related grants." 2025 WL 2415669, at *1. That limitation may have been significant where the grantee was required to provide "a royalty-free, nonexclusive, and irrevocable license to recipient data." APHA Opp'n to Stay Appl. 29 n.5, No. 25A103 (U.S. Aug. 1, 2025).

OJP points (at 32-33) to the grants' ministerial data collection and reporting requirements. Treating those grant terms as consideration would make a hash of the carefully drawn distinctions between grants

and contracts. Indeed, because every grant sets out some terms and conditions, Defendants' position apparently would treat all grants as contracts. That is not the law. *Lummi Tribe of the Lummi Rsrv. v. United States*, 870 F.3d 1313, 1319 (Fed. Cir. 2017) (a claim regarding "strings-attached" grants subject to agency "supervision" was outside CFC's jurisdiction).

Defendants' reliance on *Columbus Regional Hospital v. United States*, 990 F.3d 1330 (Fed. Cir. 2021), repeats the same error. The agreement in that case evidenced consideration because the recipient "agreed to act on [the agency's] behalf," *id.* at 1340, by "performing services [the agency] would otherwise have to perform . . . thus conferring a direct benefit," *Urb. Sustainability Dirs. Network v. USDA.*, 2025 WL 2374528, at *17 (D.D.C. Aug. 14, 2025). Nothing in Plaintiffs' grant agreements confers a similar direct benefit on OJP, as "distinct from generally advancing [the agency's] mission." *Id.*

Nor does *Climate United* control here. The grantees there did not dispute the existence of "the traditional contract elements," including "consideration." 2025 WL 2502881, at *9. Similarly, in *California*, the grantees assumed that the "awards ha[d] the essential characteristics of

15

contracts." Opp'n to Appl. 22, No. 24A910 (U.S. Mar. 28, 2025). Because courts "rely on the parties to frame the issues for decision," *United States v. Sineneng-Smith*, 590 U.S. 371, 371-72 (2020), those decisions cannot establish a controlling test for demonstrating contractual consideration.

Ultimately, OJP fails to provide any clear dividing line between grants and contracts, let alone explain what features of these grants evidence contractual intent and consideration. It therefore cannot establish that the CFC has jurisdiction over this case.

## C.     Grant termination decisions are judicially reviewable

Defendants also ask for affirmance based on an alternative argument, not reached by the district court, that the challenged agency actions are committed to agency discretion by law.[3] If this Court chooses to reach the argument in the first instance, this contention should be rejected. The APA exception OJP invokes is construed "quite narrowly" and the case does not involve one of the "rare" circumstances where

---

[3] OJP implies (at 34) that the district court "recognized" that the agency has unconstrained discretion to "reallocate" funding, but the cited passage from the opinion's statutory background section says no such thing. JA548.

courts have no law to apply. *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018).

OJP insists that under *Lincoln v. Vigil*, 508 U.S. 182 (1993), it has unreviewable discretion when allocating grant funds and, thus, that there is no law to apply to grant termination decisions. But this conclusion does not follow. Plaintiffs are not asking the Court to second-guess OJP's chosen funding priorities. Nor are they alleging that OJP was required to make awards to them in the first instance or to renew awards in perpetuity. Rather, Plaintiffs challenge OJP's midstream recission of current awards that were being performed consistent with applicable conditions. Even assuming that OJP has unreviewable discretion to set funding priorities (a question the Court need not resolve), it does not follow that OJP can retroactively alter those priorities at whim, rather than waiting until the next funding cycle to implement changed priorities.

OJP also concedes (at 35-36), as it must, that it is required to "abide[] by . . . whatever self-imposed obligations may arise," including "from regulations." This concession is notable because Plaintiffs allege that the grant terminations here contravened the agency's own binding

regulations under Section 200.340, which supplies the law to be applied. *Urb. Sustainability Dirs.*, 2025 WL 2374528, at \*25 (finding claims based on Section 200.340 to be judicially reviewable). Resolving the legal question of whether Section 200.340(a)(4) authorizes terminations based on changed agency priorities is within the heartland of judicial competence.

OJP insists (at 39) that courts are unable to assess whether a given grant continues to effectuate agency priorities, but it is not clear why this would be so. While courts may not be well-positioned to determine what priorities the agency should adopt, they are perfectly capable of determining whether agencies are adhering to their own claimed priorities. Here, for instance, the district court had no trouble discerning that Plaintiffs' grants "were for th[e] very purposes" that OJP claimed to be prioritizing. JA547. Even when a statute confers broad discretion on an agency, courts can review agency decisions for compliance with "the general requirements of reasoned agency decisionmaking" and can set aside "agency action that is incongruent with what the record reveals about the agency's priorities and decisionmaking process." *Dep't of Com. v. New York*, 588 U.S. 752, 772, 785 (2019); *cf. Am. Med. Ass'n v. Reno*,

57 F.3d 1129, 1134 (D.C. Cir. 1995). That is all Plaintiffs' arbitrary-and-capricious claim seeks here.

### D. Plaintiffs' APA claims are not only viable but likely to succeed on the merits

Plaintiffs are likely to succeed on their APA claims. OJP terminated nearly a billion dollars' of funding based on a novel regulatory interpretation that finds no support in the text of the relevant termination provision. OJP's mass terminations were also "unquestionably arbitrary." JA547.

1. Section 200.340 allows for termination where "an award no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4). OJP contends that post-award changes in priorities are sufficient grounds for termination, but this interpretation cannot be squared with the structure of that provision nor with regulatory language making clear that program goals and agency priorities are fixed when an award is solicited.

Agencies must provide public notices of funding opportunities (NOFOs) containing "sufficient information to help an applicant make an informed decision about whether to submit an application" for federal funding, including describing the agency's "priorities" in making

selections.  78 Fed. Reg. 78,590, 78,621-78,622 (Dec. 26, 2013); *see also* 2 C.F.R. § 200.203.  All NOFOs must set forth a "program description" that "must include . . . [t]he general purpose of the funding and what it is expected to achieve for the public good"; and "[t]he Federal agency's funding priorities or focus areas, if any."  Guidance for Federal Financial Assistance, 89 Fed. Reg. 30,046, 30,204 (Apr. 22, 2024).  "[P]rogram goals" and "agency priorities" are fixed at the time the award is solicited.

OJP thus misses the mark in arguing (at 40) that the word "effectuates" is in the present tense.  While the efficacy of the grant should certainly be evaluated at the time of the termination decision, under the regulations, the baseline against which the grant must be judged is the program goals and agency priorities articulated in the NOFO, not new goals or priorities first announced in a termination notice.  *See* Pls. Br. 44-45; Guidance for Grants and Agreements, 85 Fed. Reg. 49,506, 49,507-49,508 (Aug. 13, 2020).  OJP can point to no authority supporting its position that it is authorized to change its priorities after a grant was awarded.

OJP protests (at 40) that "every new presidential Administration would be bound to follow the funding choices of its predecessor," but that

effect follows from regulations that cabin an agency's ability to terminate grants. It is OJP's interpretation that is the outlier: no previous administration effectuated a mass termination of active awards because of new policy goals. OJP is free to adopt new priorities when issuing NOFOs for *new* grants but may not terminate already-awarded grants on that basis. OJP's reading would also render much of Section 200.340(a) superfluous, as it would effectively give the government a right to terminate any grant at will. *See, e.g.*, 2 C.F.R. § 200.340(a)(1)-(3). Were that the case, there would be no need for OJP to invoke other bases for termination if it could assert any priorities, new or old, and terminate grants on that basis.

2. Section 200.340 separately makes clear that OJP cannot terminate a federal grant award where "the terms and conditions of the Federal award" do not "clearly and unambiguously" authorize termination on a given basis. 2 C.F.R. § 200.340(b).

OJP's position is that a statement in the grant agreements that the "[t]he Uniform Administrative Requirements, Cost Principles, and Audit Requirements in 2 C.F.R. Part 200, as adopted and supplemented by DOJ in 2 C.F.R. Part 2800 . . . apply to this award" sufficed to put Plaintiffs

on notice that OJP could rely on subsection (a)(4) to terminate. But under the plain terms of Section 200.340(b), OJP is not permitted to rely on the existence of regulations or incorporate those regulations by reference to provide notice of the potential bases on which it might terminate a grant. OJP does not otherwise engage with or rebut Plaintiffs' arguments.

The fact that the Uniform Guidance permits certain information to be incorporated "by reference" into a federal award, 2 C.F.R. § 200.211(c)(1)-(2), while requiring that an award must specify the termination provisions "clearly and unambiguously" confirms that incorporation by reference is not clear and unambiguous notice. OJP's incorporation of the entirety of Part 200 simply cannot be squared with Section 200.340's requirement that the instances in which an award may be terminated must be clearly and unambiguously specified "in the terms and conditions of the federal award," including if an agency wishes to terminate a grant for failure to effectuate agency priorities.

OJP's position is further undermined by the fact that other agencies include termination language explicitly in the terms and conditions of their awards. *Compare, e.g.*, EPA, General Terms and Conditions, https://perma.cc/CRC9-PZ9Q (Oct. 1, 2023) (providing that "EPA may

unilaterally terminate this award in whole or in part . . . if the award no longer effectuates the program goals or agency priorities"), *with* OJP, General Conditions for OJP Awards in FY 2024, https://perma.cc/X7AF-M8MK (Aug. 9, 2024) (including no language about Section 200.340 or termination based on a failure to effectuate agency priorities). OJP elected not to include this language in its general conditions and cannot be saved by its atextual interpretation of Section 200.340.

A recent Executive Order underscores the divergence between the termination provision and OJP's interpretation of it. Under that order, each agency must detail "whether the agency's standard terms and conditions . . . include the termination provisions described in 2 CFR 200.340(a), including the provisions that an award may be terminated by the agency 'if an award no longer effectuates the program goals or agency priorities.'" Exec. Order No. 14,332, 90 Fed. Reg. 38,929, 38,932 (Aug. 7, 2025). Each agency must also "revise the terms and conditions of existing" grants to "clarify" that "termination is permitted, including if the award no longer advances agency priorities." *Id.* Such a revision of all standard terms and conditions would, of course, be unnecessary if OJP

23

is correct that incorporation by reference of all of Part 200 satisfies Section 200.340.

3. OJP's terminations were also arbitrary and capricious.  OJP does not contest that its terminations did not include any explanation specific to each individual grantee or explain why each award no longer "directly" served OJP's priorities.  Nor does OJP dispute that it failed to consider the grantees' serious reliance interests or alternatives to abruptly terminating funding.

OJP relies heavily (at 42-43) on an assertion that it undertook an "individualized" review of OJP grants prior to termination.  Not a whiff of this purportedly individualized review is evident in the explanation OJP provided in the termination notices.[4]  The brief (at 43) gestures at the possibility that an agency could "rationally decide to fund activities that are more direct than" certain services provided by Plaintiffs.  But that hypothetical only underscores the fundamental problem with OJP's rationale.  OJP Br. 44.  The actual explanations provided by OJP (at 51-

_____

[4] It also does not refute the allegation that a "DOGE staffer" "created [a] list" of "grant awards targeted for termination . . . without consulting the OJP program managers, many of whom learned of the terminations only after they were communicated to grantees."  JA21.

53) did not include *any* explanation supporting its assertion that the grants no longer directly served its articulated priorities. Finally, that OJP terminated only a subset of grants has no bearing on the inadequate explanation. Indeed, it only underscores OJP's arbitrariness given that OJP's counsel could only "shrug[] his shoulders" when asked to explain why the terminated grants were selected. JA547.

OJP additionally argues (at 45) that it need not have considered reliance interests or alternatives to immediate termination because grantees' "reliance would be objectively unreasonable given the clear contractual terms." As explained, *supra* at 21-23, the grant awards did not provide "clear" notice that the regulations require. Moreover, notice does not "automatically preclude reliance interests," or absolve the agency from considering the grantees' obvious reliance interests in their funding. *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 31 (2020).

## II. The District Court Erred In Dismissing Plaintiffs' Constitutional Claims, Which Are Likely To Succeed

The district court also erred in dismissing Plaintiffs' due-process claim on the merits.

25

### A.    Constitutional claims belong in district court

The district court correctly relied on binding precedent holding that constitutional claims fall within its jurisdiction. JA572 (citing *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 610 (D.C. Cir. 1992), *abrogated on other grounds, Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017)).

OJP nonetheless suggests (at 45) that the constitutional claims belong in the CFC because they sound in contract. But the CFC lacks jurisdiction to hear due-process claims. *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). Accordingly, the Tucker Act cannot divest the district court of jurisdiction. *Tootle v. Sec'y of Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006). Indeed, the Solicitor General's stay application in *APHA* appears to acknowledge the correctness of the district court's exercise of jurisdiction over constitutional claims here. *See* Stay Appl. 5 & n.2, No. 25A103 (U.S. July 24, 2025) (citing the district court's consideration of Plaintiffs' "constitutional claims" in list of "courts properly recogniz[ing]" their jurisdiction).

### B.    Plaintiffs have a protected property interest

On the merits, OJP fails to resuscitate the district court's flawed determination that Plaintiffs lacked a protected property interest in the

grant awards. All agree that the "essential condition of a protected property interest" is a "legitimate claim of entitlement." *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 41 (D.C. Cir. 2015). That depends on whether the government's "implementing regulations place 'substantive limitations on official discretion' to withhold award of the benefit." *Id.* at 41-42. They do.

As we explained (Pls Br. 55-57), the Uniform Guidance limits official discretion to terminate grants by authorizing such terminations only in four scenarios. 2 C.F.R. § 200.340. None permits the government to terminate the grants based on a standardless exercise of discretion. Rather, two permit termination based on consent and are not relevant here. *Id.* § 200.340(a)(2)-(3). The other two permit termination only for cause. *Id.* § 200.340(a)(1) (noncompliance), § 200.340(a)(4) (the "award no longer effectuates the program goals or agency priorities"). OJP identifies no authority allowing grant terminations outside of these four limited circumstances, and they do not defend the district court's

assumption that the use of the word "may" defeats a property interest. *See* JA575.[5]

Instead, OJP contends (at 47) that Section 200.340(a)(4) confers "broad discretionary authority" to terminate an award if an agency decides that the award no longer effectuates agency priorities.  The fact that the agency must render a specific determination based on an enumerated criterion indicates that the decision "is subject to meaningful substantive constraints."  *Esparraguera v. Dep't of the Army*, 101 F.4th 28, 38 (D.C. Cir. 2024).  An agency cannot decide to terminate a grant "with no reason at all," and it cannot terminate a grant under Section 200.340(a)(4) "without first making the requisite findings" based on the regulatory criterion.  *Id.*[6]

---

[5] Defendants suggest in passing that dicta from *Climate United* indicates that the Uniform Guidance's limited set of termination provisions are not enforceable.  OJP Br. 47.  But Plaintiffs' due-process claim does not seek to enforce the Guidance; rather, the Guidance explains why Plaintiffs have a protectable property interest.  Regardless, DOJ adopted the Guidance via regulation, making it enforceable.  2 C.F.R. § 2800.101.

[6] Defendants' citation (at 47) to *Caldwell & Santmyer, Inc. v. Glickman*, 55 F.3d 1578 (Fed. Cir. 1995), is inapposite.  That case concerned a contract that could be terminated for convenience, *id.* at 1581, so the court emphasized the breadth of the government's discretion.

Treating the grants as contracts does not alter that conclusion. Almost a century ago, "the Supreme Court expressly held 'rights against the United States arising out of a contract with it are protected by the Fifth Amendment.'" *Antolok v. United States*, 873 F.2d 369, 378 (D.C. Cir. 1989) (brackets omitted). This Court has reaffirmed the principle that "contractual rights against the [federal] government are property interests protected by the Fifth Amendment." *Larionoff v. United States*, 533 F.2d 1167, 1179 (D.C. Cir. 1976), *aff'd on other grounds,* 431 U.S. 864 (1977).

*C&E Services, Inc. of Washington v. D.C. Water & Sewer Authority*, 310 F.3d 197 (D.C. Cir. 2002), does not advance Defendants' position. *Contra* OJP Br. 47-49. That case held that bidders for a government contract do not have a protected property interest "until contracts are actually awarded." *C&E Servs.,* 310 F.3d at 200. Once the contract is awarded, procedural due process protects "the security of interests that a person *has already acquired* in specific benefits." *Id.* (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972)). Defendants'

---

The Uniform Guidance contains no provision allowing the government to terminate grants for convenience.

lengthy summary of the case elides that holding. Nothing in *C&E Services* diminishes other precedents identifying a protectable property interest in contracts with the United States.

### C. Due process requires pre-deprivation notice and a hearing

Under ordinary due-process principles, agencies must provide pre-deprivation process before terminating grants. Pls. Br. 59-60. OJP suggests (at 49) that a post-hoc breach-of-contract suit provides all the process due. This argument was not raised in district court and is therefore forfeited. *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019); *see* Dkt. 27, at 18-21 (asserting that Plaintiffs lacked a protected property interest); Dkt. 40, at 7-8 (same). Forfeited arguments are not appropriate alternate grounds for affirmance. *See Cameron v. EMW Women's Surgical Ctr.*, 595 U.S. 267, 275 (2022).

In any case, OJP overreads *Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189 (2001). There, the Supreme Court held a state-law breach-of-contract suit provided adequate process to vindicate a contractor's claim that a state had improperly withheld contractual payments. *G&G Fire Sprinklers,* 532 U.S. at 196. That was so because "the plaintiff "ha[d] not been deprived of any present entitlement," *id.* at 190; the dispute turned

entirely on the plaintiff's contractual right to payments for work already performed.   By contrast, Plaintiffs assert a present entitlement to perform their grants—in much the same way that tenured government employees can assert a procedural due process claim to vindicate their present entitlement "to pursue a gainful occupation."  *Id.*; *see also Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205*, 389 F.3d 685, 692 (7th Cir. 2004) (a superintendent had a "present entitlement" to retain his position during a three-year contract).

Finally, Defendants fret (at 52) that requiring a pre-deprivation notice and hearing would be unduly burdensome.  Recognizing that due process requires, at a minimum, notice and hearing prior to a grant termination does not threaten to transform every contract dispute into a constitutional case (even assuming grants and contracts should be treated identically).   Prior due-process decisions have not converted everyday disputes about government benefits or employment into constitutional cases.  Misguided concerns about administrative burden should not diminish Plaintiffs' due-process rights.

31

### III.  This Court Should Grant A Preliminary Injunction

Plaintiffs' opening brief asked this Court to preliminarily enjoin the grant terminations.  Post-*APHA*, Plaintiffs agree that their APA claims do not provide a basis for such relief, but they remain entitled to a preliminary injunction on their constitutional claims.  Given the urgency of the matter, this Court should enter a preliminary injunction.  *See Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021).

The record establishes that Plaintiffs are suffering and will continue to suffer irreparable harm from the inability to accomplish their organizational missions, the loss of skilled employees, and reputational damage.  Pls. Br. 61-65.  OJP does not contest those facts or distinguish the precedents holding that those harms are irreparable.  It merely reiterates its view that Plaintiffs are suffering "monetary" injuries.  OJP Br. 53.  Even if it were correct to set aside the irreparable effects Plaintiffs articulated, the monetary harm alone would still be irreparable.  "A business's destruction in its current form commonly qualifies as irreparable harm," *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1329 (D.C. Cir. 2024) (internal quotation marks omitted), and that is exactly what is threatened here, *see* Pls. Br. 61, 67.

32

On the other side of the ledger, OJP asserts harm from providing funding it cannot later recoup. OJP Br. 53. Though that may be irreparable harm where the government is likely to prevail on jurisdictional grounds, *see APHA*, 2025 WL 2415669, at *1, the government has no valid interest in illegally withholding funds. *Shawnee Tribe*, 984 F.3d at 102–03. Particularly because Plaintiffs' due-process claim clearly belongs in district court, *APHA* sheds little light here.

At a minimum, all of Plaintiffs' claims support an injunction prohibiting OJP from re-obligating the grant funds while litigation is ongoing. Such an injunction would prevent a situation where Plaintiffs could not recover the funds at the end of the litigation, while not requiring the government to disburse any funds immediately. Pls. Br. 65-66. OJP asserts no harm from such a limited injunction.

Finally, injunctive relief is appropriate with respect to the putative class. Plaintiffs do not seek a universal injunction. *Contra* OJP Br. 53-54. Instead, they merely seek relief that would prevent irreparable harm to putative class members pending further proceedings. OJP observes that *A.A.R.P. v. Trump,* 145 S. Ct. 1364 (2025) (per curiam) involved

different facts, but the underlying concerns are present here. The government is poised to inflict irreparable harm on putative class members before they have a full opportunity to litigate their claims in an orderly manner. *See* Pls. Br. 65 (explaining that re-obligation could occur "at any moment" for the putative class members).

## CONCLUSION

The Court should reverse the district court's entry of dismissal and should enter a preliminary injunction.

Dated: September 8, 2025                    Respectfully submitted,

                                           */s/ Lisa Newman*
                                           Lisa Newman

Joshua Perry
Joshua Stanton
E. Danya Perry
Perry Law
445 Park Avenue, 7th Floor
New York, NY 10022
(212) 251-2619
jperry@danyaperrylaw.com

Lisa Newman*
Joshua Salzman
Simon C. Brewer*
Jennifer Fountain Connolly
Cortney Robinson
Somil Trivedi
Brian Netter
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
lnewman@democracyforward.org

*Not admitted in the District of
Columbia; practicing under the
supervision of Democracy
Forward lawyers who are
members of the D.C. Bar.

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface and type-volume limitations in Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because it contains 6,395 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: September 8, 2025

*/s/ Lisa Newman*
Lisa Newman

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, I state that no Plaintiffs have any parent company and that no publicly held company has a 10% or greater ownership interest in any Plaintiffs.

Dated: September 8, 2025                    */s/ Lisa Newman*
                                            Lisa Newman

## CERTIFICATE OF SERVICE

I certify that on September 8, 2025, a true and correct copy of this Brief was filed with the Clerk for the United States Court of Appeals for the District of Columbia Circuit via the Court's electronic filing system, which will forward a copy to all counsel of record.

Dated: September 8, 2025          */s/ Lisa Newman*
                                  Lisa Newman